# Patton *v.* Watkins.

*Contest of Election for Constable.*

1. *Irregularities in conducting election; effect of.*—Irregularities in conducting an election, such as a failure of the sheriff to furnish booths, closing the polls for dinner during the legal hours for voting, during a part of which time the managers permitted the ballot box to be out of their sight, or the failure of a voter to make affidavit on applying for the assistance of an official marker in preparing his ballot, or that the booth was not occupied by the voter alone while preparing his ballot, will not affect the validity of votes cast.

2. *Marking ballots of illiterate person.*—The exercise of discretion in the selection of candidates for the voter assisted in marking his ballot is prohibited to the marker, and the substitution by the marker of his own choice for the voter's choice vitiates the ballot so prepared.

APPEAL from the Probate Court of Jefferson.
Heard before the Hon. J. P. STILES.
A sufficient statement of facts appears in the opinion.

C. P. BEDDOW and F. E. BLACKBURN, for appellant, cited *State v. Dillon*, 22 L. R. A. 124; *Boyd v. Mills*, 25 L. R. A. 487; *Ellis v. May*, 99 Mich. 538; *Attorney-General v. Stillman*, 108 Mich. 419; *Attorney-General v. McQuade*, 94 Mich. 438; *Pearson v. Supervisors*, 91 Va. 322; *Major v. Barker*, 35 S. W. Rep. 543; *Sproule v. Fredericks*, 11 So. Rep. 427; *Montgomery v. Oldham*, 42 N. E. Rep. 474; *Russell v. McDowell*, 83 Cal. 70; *Tebbe v. Smith*, 108 Cal. 101.

WALKER PERCY, *contra.*—(1.) The irregularities were not sufficient to constitute malconduct, fraud or corruption within the meaning of subdivision 1 of section 1667.—*Taliaferro v. Lee*, 97 Ala. 104. (2.) Where a case is tried without a jury in the court below, all

reasonable presumptions are indulged in favor of the decision of the trial court upon questions of fact.—*First Nat. Bank v. Hall,* 119 Ala. 64.

SHARPE, J.—At an election held to fill the office of constable contestant and contestee were opposing candidates. There were two polling places in the precinct. At one of them, contestant received a majority of the votes. At the other the contestee received a larger majority, and was accordingly declared elected. This result was contested in the probate court, and was sustained by the judgment of the probate judge sitting without a jury. The evidence from which error in the judgment is sought to be shown relates only to the last mentioned polling place. It shows that at that place no booths were provided for the occupation of voters while preparing their ballots; that ballots were prepared in a room adjoining that occupied by the inspectors, and that many voters had their ballots marked by W. T. Skinner, an official marker, without making oath to their own inability to do so as prescribed by section 1623 of the Code. It also shows that instead of keeping the polls open continuously from the hour of opening to the legal hour of closing, the inspectors left the polling place and remained away from it for about an hour and ten minutes while at dinner, and that though they carried the ballot box with them when going to dinner it was out of their sight. On the trial there was evidence, but with which Skinner's testimony was in conflict, tending to show that he acted in marking ballots cast by illiterate voters without any expression from those voters indicating for whom they desired to vote.

The statutes providing for contests for election disclose a policy adverse to disturbing results declared by election officers whereever they are supported by true estimates of the legal votes cast. No malconduct whether of officers or of persons will furnish cause for setting aside an election "unless thereby the person declared elected, and whose election is being contested, be shown not to have received the highest number of legal votes, nor must any election contested under the

provisions of this Code be annulled or set aside because
of illegal votes given to the person whose election is con-
tested, unless it appears that the number of illegal votes
given to such person, if taken from him, would reduce
the number of votes given to him below the number of
legal votes given to some other person for the same
office."—Code, § 1668. In the trial of contests no pro-
vision is made for investing with the office any person
other than the one whose election is declared unless such
other person "received or would have received had the
ballots intended for him illegally rejected, been received,
the highest number of legal votes."—Code, § 1700. A
vote cast by a legally qualified elector at an election held
by the proper officers at a time and place designated by
law is not made illegal by a failure to observe a mere
direction given by statutes as to the mode of conduct-
ing the election. In general, statutory provisions re-
lating to procedure in elections are directory merely,
unless their disregard be made expressly vitiative.
Paine Elec., § 497; McCrary Elec., § 200. No such
consequence of non-observance is expressed in the
statutes which require that the sheriff shall furnish
booths, and that the polls be kept open without inter-
mission during the legal hours for voting, or in that
which directs that the voter shall occupy a booth alone
while preparing his ballot, or in that which requires him
to make an affidavit on applying for assistance of an
official marker in such preparation. Dereliction in
respect of official duty pertaining to election may be
of such kind as to render the culpable officer amenable
to penal laws without affecting the validity of votes
cast under his ministration, and this principle applies
to the irregularities imputed to official misconduct of
the sheriff and of the managers at this election. To be
entitled as a matter of right to assistance in preparing
his ballot, the voter must make affidavit of his own ina-
bility to prepare it. But it is the fact of disability
rather than the sworn declaration, that merits the as-
sistance for which the law provides. The oath is re-
quired only as evidence of the fact. If an official marker
being assured that an elector is by reason of illiteracy

or otherwise unable to mark his ballot so as to vote according to his choice, assists him to do so, the fact that the oath is not taken or required though constituting an irregularity does not make the vote illegal. But the sole function of a marker is to prform the mechanical act of preparing the ballot. His duties are defined by the statute (Code, § 1623), which provides that a disabled or illiterate elector "may have the assistance of a marker to be selected by him from the number of markers appointed by the inspectors, or, in the event no markers are available, of an inspector to be selected by him, in the preparation of his ballot, and the marker or inspector so selected shall retire to a booth or compartment with the elector and there mark the elector's ballot by marking with pen and ink or pencil or stencil cross-marks (X) before the name of each candidate for each office to be given to him by the elector without suggestion or interference from the marker or inspector. The marker or inspector assisting the elector shall then deliver the ballot to the elector and withdraw from the booth or compartment." From this it is seen that the exercise of all discretion in the selection of candidates for the voter assisted is prohibited to the marker, and that the substitution of his own for the voter's choice in such selection is a flagrant violation of an official trust. Such malconduct amounts furthermore to a fraud which vitiates the ballot so prepared and deprives it of the quality of legality. There is testimony which if believed warrants the conclusion that more than ninety ballots cast and counted for the contestee were prepared by Skinner, and that in marking them he acted without advice or instructions of the electors by whom they were cast. A majority of the court are of the opinion that this fact is established by evidence which clearly outweighs the testimony contradicting it, and overcomes such presumption of correctness as the trial court's judgment is entitled to. It follows that these marked ballots are void and cannot be taken as representing votes. By rejecting them it is made to appear that contestant received the highest number of legal votes. Accord-

ingly the judgment appealed from will be reversed, and one will be here rendered declaring the contestant duly elected to the office in question.—Code, § 1700.

Reversed and rendered.