(100 South. 845)

GARRETT v. CUNINGHAME.   (1 Div. 269.)

(Supreme Court of Alabama.   June 12, 1924.)

1. Elections ⬤‒305(6)—Usual presumptions obtain in support of judgment in election contest.

Usual presumptions obtain in support of judgment in an election contest based upon material testimony given ore tenus in open court and on documentary evidence.

2. Elections ⬤‒269—Right of contest given by statute.

Right of contest is given by virtue of Code 1907, §§ 166, 455, 470, and contest must be instituted and prosecuted within the "jurisdiction," etc., and as prescribed by law and by a person so authorized.

3. Elections ⬤‒293(1)—Proof that contestant qualified voter properly shown by certificate of judge of probate.

In election contest under Code 1907, §§ 166, 455, 470, where proof that contestant was qualified voter in county was shown without objection by certificate of judge of probate, trial court properly proceeded to hearing and determination of contest.

4. Mandamus ⬤‒71—Appropriate remedy to require officer to act in given premises.

Mandamus is an appropriate remedy to require an officer to act in given premises in discharge of ministerial duty.

5. Mandamus ⬤‒74(1)—Declared nominee may compel discharge of ministerial duty in printing official ballot.

Declared nominee of his party where matter is not duly controverted, as by pending contest or appeal to executive committee of party, may compel discharge of ministerial duty in printing official ballot.

6. Mandamus ⬤‒74(3)—Certification by state committee as to nominee authorized probate judge in printing ticket with his name.

Final ratification by state committee and certificate of its chairman as to nominee at primary election under Gen. Acts 1915, p. 218 et seq., authorized probate judge in printing ticket with name of such nominee, and opponent in contest was not entitled to mandamus to compel the printing of his name.

7. Elections ⬤‒1—Right to vote not property, and exists only by Constitution and statute.

Right to vote is neither a property right nor a right of person, but exists only as conferred by Constitution and statute.

8. Elections ⬤‒1—Franchise political privilege which Legislature may regulate.

Right to vote is a political privilege which Legislature may regulate to an extent not prohibited by organic law.

9. Elections ⬤‒152—Parties submitting dispute as to nomination to arbitration of party were bound by finding and certificate through chairman.

Parties, claiming to be nominated at primary election, having submitted their cause by agreement to arbitration of party and to its subcommittee, were bound by finding and certificate thereof by committee through its chairman to judge of probate after county committee had failed or refused to act in premises, under Gen. Acts 1915, p. 234, § 48 et seq.

10. Elections ⬤‒152—Electors joining in primaries subject to party's laws.

When electors join in party primaries in nomination of candidate, they act with that organization and are subject to its laws and ultimate decisions with respect to nomination so made and certified under Gen. Acts 1915, p. 218 et seq., and Code 1907, § 459.

11. Elections ⬤‒186(4)—Technical errors in marking ballot should not cause disfranchisement.

A voter should not be disfranchised by rejection of his ballot in whole or in part, when it is clear that he made an honest effort to comply with law and has substantially complied with its mandatory requirements, this rule being expressed under Code 1907, § 414.

12. Elections ⬤‒227(8)—Stamping name of nominee on some ballots and requiring electors to declare in public whether they wanted such ballot held not to vitiate election.

Where election officers stamped candidate's name at bottom of part of election ballots, there being no room to write name in where it belonged, and required electors before voting to declare which ballot they wanted, held not to vitiate result of election in view of Code 1907, §§ 414, 455, 456, 474, and Const. 1901, §§ 179, 189, 190.

Appeal from Circuit Court, Clarke County; Arthur B. Foster, Judge.

Contest by Coma Garrett, Jr., of the election of James G. Cuninghame to the office of Probate Judge of Clarke County. Judgment for contestee, and contestant appeals. Affirmed.

The petition for mandamus in the case numbered 1 Div. 263 [1] alleges that in the primary election, wherein relator Cuninghame and respondent Garrett were candidates, Cuninghame received the highest number of votes, and was declared by the county committee to be the nominee; that Garrett insti-

---

⬤‒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Post, p. 442, 100 South. 855.

tuted a contest of said election before the county committee, resulting in a finding for contestee; that contestant appealed to the state executive committee from the action of the county committee; that the chairman of the state committee did not call a meeting of the state committee, but selected five members of the committee to hear the appeal and to determine and adjudicate the same; that said five members met, heard the appeal, and rendered judgment to the effect that contestant had received a majority of votes; that said subcommittee so reported or certified to the chairman of the state committee, and that such chairman certified the result to the chairman of the county committee; that contestant, the chairman of the state committee and the subcommittee of five, are claiming that the finding of the subcommittee is final, and no appeal therefrom is pending; that the statute provides for appeals to the state committee; that one-third thereof is declared to be a quorum, and that the subcommittee of five were less than one-third of the state committee; that such subcommittee had no authority to hear and determine the appeal, but only to take testimony and report to the full committee for final adjudication; and that the state committee has not determined the appeal within 30 days before the general election.

It is alleged that the chairman of the state committee was without authority to issue his certificate to the chairman of the county committee declaring Garrett to be the nominee for that the judgment and decision of the subcommittee was wholly void; that it is the purpose of the state chairman, in the event the county committee fails to certify to the probate judge the finding of the subcommittee, himself to certify the same to the probate judge; that unless restrained, Garrett, as probate judge, will cause his own name to be printed upon the ballot as the nominee.

It is prayed that mandamus issue to Garrett, as probate judge, commanding him to print upon the ballot the name of relator as nominee for the office of probate judge.

Respondent Garrett, by answer and plea, set up that the state committee by resolution declared that all election contests should be heard and determined by a subcommittee to be appointed by the chairmen, and, also, that each member of the state committee waived notice of any hearing on contest filed; that upon respondent's appeal to the state committee, relator, through his attorney, requested that the state chairmen appoint a subcommittee to hear and determine the contest; that relator appeared in person and by attorney and participated in this hearing, made no objection to the jurisdiction or authority of the subcommittee, and assented to its finding and judgment.

Ray Rushton and James J. Mayfield, both of Montgomery, and J. F. Thompson, of Birmingham, for appellant.

Elections must be by official ballot, and all ballots used must be uniform. Code 1907, §§ 378, 389; State v. Sadler, 25 Nev. 131, 68 Pac. 284, 59 Pac. 546, 63 Pac. 128, 83 Am. St. Rep. 573; Coleman v. Eutaw, 157 Ala. 327, 47 South. 703; Slenker v Engel, 250 Ill. 499, 95 N. E. 618; Catlett v. Knoxville Co., 120 Tenn. 699, 112 S. W. 559; 9 R. C. L. 1049; 54 N. J. Law, 446, 24 Atl. 489, 1021, 16 L. R. A. 769; 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624; 20 C. J. 141; 111 N. C. 463, 16 S. E. 393, 18 L. R. A. 393, 32 Am. St. Rep. 810. Where fraud was promiscuously committed by election officers, which affected the result to an extent the exact limits of which it is impossible to ascertain, the votes affected therewith should be thrown out entirely. Rhodes v. Driver, 69 Ark. 510, 64 S. W. 272; 183 Ky. 126, 208 S. W. 417; 125 Ky. 777, 102 S. W. 248. Purpose of the election laws is to guarantee to each voter the right to cast a secret ballot. Code 1907, §§ 388, 6780, 6798, 6815; Taylor v. Bleakley, 55 Kan. 1, 39 Pac. 1045, 28 L. R. A. 683, 49 Am. St. Rep. 233; State v. McElroy, 44 La. Ann. 796, 11 South. 133, 16 L. R. A. 278, 32 Am. St. Rep. 355. Distinguishing marks upon ballots under the Australian system will render such ballots void. Voorhees v. Arnold, 108 Iowa, 77, 78 N. W. 795; State v. Sadler, 25 Nev. 131, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128, 83 Am. St. Rep. 573. The statute requiring ballots to be marked in a certain manner is mandatory and requires substantial compliance. Curran v. Clayton, 86 Me. 42, 29 Atl. 930; Jennings v. Brown, 114 Cal. 307, 46 Pac. 77, 34 L. R. A. 45; Van Winkle v. Crabtree, 34 Or. 462, 55 Pac. 831, 56 Pac. 74.

Wm. Cuninghame, of Linden, Mulkey & Mulkey, of Geneva, and Stevens, McCorvey, McLeod & Goode, of Mobile, for appellee.

A person instituting a contest must have been a qualified elector. Code 1907, § 455; Finklea v. Farish, 160 Ala. 238, 49 South. 366. Certification of that fact by Garrett as probate judge was not sufficient. Adams v. C. of G., 198 Ala. 436, 73 South. 650; Bonner v. Phillips, 77 Ala. 427; Planters' Co. v. Costillo, 10 Ala. App. 385, 64 South. 473; 2 Ency. Evi. 964. If Garrett was not the nominee, a vote by marking in the circle above the name of the party, or by marking opposite his name, does not operate as a vote for him. Price v. Lush, 10 Mont. 61, 24 Pac. 749, 9 L. R. A. 467; Maggiore v. Lochbaum, 139 La. 426, 71 South. 727; King v. McMahan, 179 Ky. 537, 200 S. W. 956. The question who was the nominee was decided by the circuit judge on appellee's petition for mandamus. Code 1907, § 4402; Viberg v. State,

138 Ala. 100, 35 South. 53, 100 Am. St. Rep. 22; Nill v. Comparet, 16 Ind. 107, 79 Am. Dec. 411; Moore v. Williams, 132 Ill. 589, 24 N. E. 619, 22 Am. St. Rep. 563; Parkhurst v. Berdell, 110 N. Y. 386, 18 N. E. 123, 6 Am. St. Rep. 384; Willard v. Ostrander, 51 Kan. 481, 32 Pac. 1092, 37 Am. St. Rep. 294. The ballot of every legal voter must be counted and be given effect according to the intent of the voter. Code 1907, § 414; Wilkerson v. Cantelou, 165 Ala. 620, 51 South. 799.

THOMAS, J. [1] The appeal is from judgment in the contest of the election of probate judge of Clarke county. The trial was before the circuit court without a jury, and resulted in a judgment in favor of contestee. The usual presumptions obtain in support of a judgment based upon material testimony given ore tenus in open court and on documentary evidence.

The parties to this suit were the only candidates for the Democratic nomination at the primary election held in said county in August, 1922, and Judge Cuninghame was declared, by the Democratic executive committee in that county, the nominee of the party. Appellant's contest before the county executive committee was decided by that committee in favor of appellee, and the former took an appeal to the state executive committee of the Democratic party. It was there duly referred to a subcommittee appointed to hear the contest, and, being heard, after both parties had appeared without objecting to the jurisdiction of that subcommittee, contestant Garrett was adjudged and declared to be the rightful nominee of the party. This decision was rendered after September 20, 1922.

Thereafter, on October 14, 1922, appellee filed a petition for mandamus before the judge of the circuit court to compel the probate judge of Clarke county to place the name of James G Cuninghame on the official ballot as the nominee of the Democratic party for probate judge, to be voted for as such at the general election to be held in November. The writ of mandamus was granted on the hearing, October 21, 1922, and on the same day the appellant took an appeal to this court, giving the supersedeas bond exhibited in the record in No. 263, 1st Div., Coma Garrett, Jr., as Judge of Probate of Clarke County, Alabama, v. State of Alabama on relation of James G. Cuninghame.

The chairman of the state Democratic committee duly called a meeting of the committee, to be held on the 26th day of October, 1922, to hear and determine this controversy over the Democratic nominee for probate judge of Clarke county, and at said hearing the state committee ratified and confirmed the said former action of its subcommittee (declaring Judge Garrett the nominee) reversing the decision and judgment of the Democratic executive committee for Clarke county declaring Judge Cuninghame to be the nominee. The decision of the state Democratic committee and certificate thereof are as follows:

"Mobile, October 27th, 1922.

"Democratic Executive Committee of Clarke County, Alabama, % Mr. H. O. Pugh, Chairman, Grove Hill, Alabama—Gentlemen: At the meeting of the state executive committee, held in Birmingham, on October 26th, 1922, at which more than a quorum, and more than one-third of the entire committee, were present, said meeting being called for the purpose of considering the contest of Coma Garrett, Jr., v. James G. Cuninghame, on appeal from your committee, in contest over the nomination for judge of probate of Clarke county, and which was more than ten days, and less than forty days, after the notice of said appeal was filed with me, on September 20th, 1922, the said contestant offered evidence in support of his contest, and the contestee offered none, and said committee returned a judgment in favor of the contestant, reading as follows:

" 'The committee affirm the action of the subcommittee, and Coma Garrett, Jr., be, and is hereby, declared, on the evidence before said committee, and now reintroduced before this committee, to be the nominee of the Democratic party, for the office of probate judge of said county, and the chairman of the Democratic executive committee of Clarke county is hereby instructed to certify the name of Coma Garrett, Jr., as said nominee, to the proper election official, as said nominee, within three days from this date, as required by law, and on its failure to do so, the chairman of this committee is instructed to file the name of said Coma Garrett, Jr., as said nominee, in accordance with law.'

"You are therefore requested and directed to certify to the judge of probate of Clarke county, Alabama, the name of Coma Garrett, Jr., as the nominee of the Democratic party in the primary held August 8th, 1922, for the office of probate judge of Clarke county.

"Yours truly,

"W/H                    J. H. Webb,
"Chairman, State Democratic Executive Committee.

"Filed in office October 27, 1922.
"Coma Garrett, Jr., Judge of Probate."

"Mobile, October 31st, 1922.

"Hon. Coma Garrett, Jr., Judge of Probate of Clarke County, Grove Hill, Alabama—Dear Sir: Inclosed herewith find copy of the order to Democratic executive committee of Clarke county to certify to you the name of Coma Garrett, Jr., as nominee of the Democratic party for the office of probate judge of Clarke county, within three days from October 26th, and for me to do so, should such committee fail or refuse to take the action directed, and said committee, having failed to do so within the time mentioned, you are hereby notified that Coma Garrett, Jr., is the Democratic nominee for the office of probate judge of Clarke county, and entitled to have his name placed upon the official ballot to be voted in the general election of November 7th, as such, and you are requested and directed to place the name of the said Coma Garrett, Jr., on

said official ballot as the Democratic nominee for probate judge of Clarke county, Ala.

"Yours truly,        J. H. Webb,

"Chairman of the State Democratic Executive Committee.

"W/H (Encl)

"Filed in office October 31st, 1922.

"Coma Garrett, Jr., Judge of Probate."

Such were the conflicting judgments as to who was the nominee of the Democratic party for said office in said county that confronted the electorate of the county when the November, 1922, general election was held. The returns as announced showed the election of Judge Cuninghame.

When the managers and officers to hold the election were to be appointed, the incumbents in the offices of judge of probate and circuit clerk were candidates for re-election, and the register in chancery named on the appointing board, to appoint election officers and managers, two persons in lieu of said respective candidates. It is alleged in the petition or articles of contest that there was a failure by the two persons so appointed to consult with the sheriff in the appointment of the respective persons to hold the election and make returns thereof in and from the respective precincts of the county; that said two substituted persons, constituting the majority of the appointing board, presented to the sheriff, for his approval, a list of said officers and managers, and the sheriff refused to sanction these appointments. Notwithstanding his refusal, the majority of the appointing board appointed said persons to hold the general election in the county.

It is shown that the following instructions as to the conduct of the election were sent out by the Cuninghame adherents, viz.:

"Instructions to be Followed.

"1. The election officers should meet at their respective polling places early and take charge thereof.

"2. If the sheriff delivers the election supplies to the managers, let them be used, including the ballots.

"3. If he fails to so deliver, then some managers will have, in a secured place, ballots to be used for said election. These ballots are printed exactly as the ballots caused to be printed by Garrett.

"4. If the sheriff delivers the ballots use them in the following way:

"(a) Below the last name on the ticket under the Democratic emblem use a rubber stamp which will be furnished.

"(b) Have the voter to cross each name, omitting the circle, until he comes to the name of Garrett, leaving that uncrossed and then place a cross before the name of Cuninghame as it appears printed or stamped at the end of the ticket.

"5. If the ballots printed by us and in the custody of one of the managers are to be used, stamp the name of Cuninghame just as before.

"6. If when you hand the ballot to a person you know him to be for Cuninghame, stamp the name and aid him in preparing it.

211 ALA.—28

"7. Watchers have been appointed by H. P. Pugh, chairman of the county Democratic executive committee of Clarke county, as provided for in section 353 of the Code of Alabama. No other watchers will be allowed to serve under the law except as appointed as above stated governing party elections as there is no other party than the Democratic in Clarke county.

"8. The sheriff has authority to appoint a deputy at each polling place, but such deputy has no authority over the election other than to preserve order. He has no business inside the polling place.

"9. If you fail to get election supplies, poll list, tally sheet and certificate of results, let this be known at Grove Hill and they will be supplied you some time before they are required to be delivered by the returning officer to the canvassing board.

"10. It is the duty of each returning officer to retain the returns delivered to him until Friday noon, at which time he will deliver them to the canvassing board.

"11. A ticket marked in the circle will not operate to vote for Garrett as he is not the nominee of the party and as his name is improperly there and should be rejected, unless the voter writes the name of Garrett or stamps it at some appropriate place on the ticket and then cross it.

"12. The oath of the election officers may be administered by any of the inspectors."

The agreement of counsel as to this is:

"A rubber stamp with pad, to be used for the purpose of stamping James G. Cuninghame's name and the office for which he was a candidate on the ballot to be used at said election, was sent by the consent of said Cuninghame to each of the voting places in said county the evening before, or the morning of, the election. Prior to the election instructions were sent out to each of the voting places, which instructions were unsigned, and a copy of which is hereto attached marked Exhibit D."

The evidence shows that these stamps were employed in stamping ballots used by electors in the respective precincts and by managers of the election before furnishing the ballots to certain of the electors.

[2, 3] At this juncture it is necessary to decide a preliminary question presented by the insistence of counsel for contestee: Was the contest duly instituted by a person authorized by law to contest the election of a judge of probate? The right of contest is given by virtue of the statute (Code, §§ 166, 455, 470; Scheuing v. State ex rel. Atty. Gen., 177 Ala. 162, 59 South. 160; Dunning v. Holcombe, 203 Ala. 546, 84 South. 740; Id., 204 Ala. 549, 87 South. 87; Black v. Pate, 130 Ala. 514, 30 South. 434; Moulton v. Reid, 54 Ala. 320), and it must be instituted and prosecuted within the "jurisdiction," etc., and as prescribed by law, and by a person so authorized. Paine on Elections, § 793; Browning v. St. Clair County, 195 Ala. 121, 71 South. 108; Watters v. Lyons, 188 Ala. 525, 66 South. 436; Finklea v. Farish, 160 Ala. 230, 238, 49 South. 366; Code, § 455. The al-

legations of the petition and denials in respondent's answer are sufficient to present the issues of contest. It is true that on the trial the petitioner, Garrett, did not testify that he was a qualified voter, nor was the "official voters' list" for the county or for his precinct introduced in evidence. The proof that contestant was a qualified voter in said county, or a precinct thereof, was shown without objection by the certificate of the judge of probate. The trial court properly proceeded to the hearing and determination of the contest.

The respective appeals are from the judgment of the circuit court, before Judge Turner, on the mandamus, and from the decision of Judge Foster in the circuit court hearing the contest of the election. The two appeals being duly submitted in this court and assigned for consideration, it is necessary to decide who was the Democratic nominee for probate judge of Clarke county, etc. The agreement of counsel shows the facts as to the respective certificates of nomination and the extent of the judgment on mandamus. The effect of the certificates is recited as follows:

"A proper certificate of the Democratic Ex. Com. of Clarke county, declaring J. G. Cuninghame to be the Democratic nominee for probate judge was filed, within the time and in the manner as provided by law, in the office of the probate judge of said county, and within the time and in the manner provided by law, the said Coma Garrett, Jr., filed his contest of the nomination of said Cuninghame before the county executive committee of the Democratic party of Clarke county, and the said county executive committee, on September 16, 1922, heard said contest and decided that J. G. Cuninghame was the nominee. Within the time and in the manner provided by law, the said Coma Garrett, Jr., appealed from such decision of said county executive committee to the state Democratic executive committee. The said appeal was referred to and tried by a subcommittee of the state executive committee of the Democratic party of Alabama, who heard and tried said appeal, both parties appearing and contesting the matter, and the said subcommittee adjudged and declared the said Coma Garrett, Jr., to be the legal nominee for probate judge. J. H. Webb, as chairman of the state executive committee, issued an order to the county executive committee of Clarke county, directing such committee to certify to the probate judge of said county the name of Coma Garrett, Jr., as the Democratic nominee for probate judge, which order was not complied with. J. H. Webb, as such chairman, on October 16, 1922, certified to the probate judge of Clarke county, the name of Coma Garrett, Jr., as the Democratic nominee for said office. On October 14, 1922, James G. Cuninghame instituted in the circuit court of Clarke county, Alabama, a mandamus proceeding against the said Coma Garrett, Jr., as judge of probate, as is alleged in and shown by respondent's answer in this cause and the exhibits thereto, which proceeding resulted, as appears from said answer and exhibits. Immediately after the judgment was rendered in said mandamus proceeding the said Coma Garrett, Jr., appealed therefrom to the Supreme Court of Alabama, and gave a supersedeas bond which was duly approved, a copy whereof is hereto attached and marked Exhibit A. On October 27, 1922, the state Democratic executive committee issued an order, which the chairman of the said county committee asserts was not received by him or by the said county committee, a copy of which is hereto attached, marked Exhibit B. On October 31, 1922, J. H. Webb, as chairman of the state Democratic executive committee certified to the judge of probate of Clarke county, Alabama, a copy of which certificate is hereto attached, marked Exhibit C."

The judgment was as follows on petition for mandamus:

"Judgment by the Court.

"State of Alabama, on Relation of James G. Cuninghame, v. Coma Garrett, Jr., as Judge of Probate of Clarke County, Alabama.

"In the Circuit Court, Clarke County, Alabama, at Law.

"This day came the parties to this cause in person and by attorneys, and the respondent demurs to the petition filed in this cause and to the rule nisi heretofore issued and said demurrer and the several grounds thereof being argued by counsel and understood by the court.

"It is ordered and adjudged by the court that the said demurrer and the several grounds to the petition and to the rule nisi be and the same is hereby overruled.

"Thereupon the respondent filed answer to the petition of the relator or to the rule nisi in this cause, incorporating in said answer certain special pleas as shown therein, to which answer and the several special pleas, the relator demurred as shown by the demurrers and the several grounds thereof filed, and said demurrers being argued by the attorneys and understood by the court.

"It is ordered and adjudged by the court that the said demurrers to the answer of the respondent and the special pleas incorporated in said answer be and the same is hereby sustained.

"Whereupon the respondent declined to plead further and declined and refused to show further cause against the issuance of the peremptory writ of mandamus in this cause.

"It is therefore considered, ordered and adjudged by the court that a peremptory writ of mandamus be and the same is hereby granted and awarded as prayed for in the petition; that the said Coma Garrett, Jr., as judge of probate of Clarke county, Alabama, be and is hereby commanded and required to cause to be printed on the ballot to be used in the November election, 1922, under the Democratic emblem thereon the name of James G. Cuninghame, as the Democratic nominee for the office of probate judge of Clarke county, Alabama; that the said Coma Garrett, Jr., as judge of probate of Clarke county, Alabama, be and he is compelled and required to disregard any certificate of J. H. Webb as chairman of the state Democratic executive committee or to disregard any certificate of the Clarke county Democratic executive committee of Alabama, if

any, which may be filed with said respondent, and based upon the findings of the subcommittee of five, with respect to the nomination for the office of judge of probate of Clarke county, Alabama; that in consequence of the foregoing, the said Coma Garrett, Jr., as judge of probate of Clarke county, Alabama, is hereby restrained and enjoined from causing to be printed his name to wit, Coma Garrett, Jr., on the said ballot under the Democratic emblem thereon, as candidate for the office of judge of probate of Clarke county, Alabama, at the election to be held on November 7th, 1922.

"It is further ordered by the court that the respondent pay the cost of this proceedings for which let execution issue.

"Ben D. Turner,
"Judge of the First Judicial Circuit.
"This the 21st day of October, 1922."

There was motion for appeal, bond fixed, appeal taken, and it was ordered, on the same date, "that said judgment be suspended until a hearing by the Supreme Court of Alabama."

Mandamus is a prerogative writ, with which the chancellor was originally invested and was extended to law judges by statute. In chapter 15, art. 22, § 459, of the Code, that jurisdiction is "denied courts of chancery in election contests; appeal," etc. The jurisdiction and functions of mandamus exercised by judges of courts of law were discussed in Wilson v. Duncan, 114 Ala. 659, 21 South. 1017, and nothing therein contained recognized that jurisdiction extended to the making of the order and judgment from which the appeal was taken in the mandamus case, and which was superseded on Judge Garrett's appeal therefrom. Lowery v. Petree, 175 Ala. 559, 57 South. 818. These last-cited cases extended only to the costs of contest and amendment of said bonds. The official ballot was prepared by the probate judge pursuant to the certificate of the executive head, Mr. Webb, chairman of the state Democratic committee, and was distributed to the several precincts of the county bearing the name of Coma Garrett, Jr., as the Democratic nominee for the office of probate judge. As printed, there was no convenient or sufficient space in the body of the official ballot for the writing of the name of another qualified person instead of the names of nominees printed thereon. Gen. Acts 1915, p. 222, § 16.

[4] To a decision of the appeal in Coma Garrett, Jr., as Judge of Probate of Clarke County, Alabama, v. State of Alabama on relation of James G. Cuninghame, 1st Div., No. 263,[1] it should be said that mandamus is an appropriate remedy to require an officer to act in given premises in the discharge of a ministerial duty. Wilson v. Duncan, 114 Ala. 659, 21 South. 1017; Robinson v. Winston County, 203 Ala. 671, 85 South. 22; Ex parte Watters, 180 Ala. 523, 61 South. 904.

In Taylor v. Kolb, 100 Ala. 603, 607, 13 South. 779, 780, the jurisdiction in the premises is thus stated:

"'When, however the power involves the exercise of judgment and discretion; when it is to be exercised only in an ascertained event, and on the occurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial.' Ex parte Harris, 52 Ala. 87. The case of Grider v. Tally, 77 Ala. 422, properly construed, does not conflict with these well-settled principles. When the act to be performed is purely ministerial, mandamus not only requires action but specifically defines the particular act to be done, and the manner in which it shall be done, so that the court or judge issuing the writ may know whether its order has been obeyed. If the writ leaves a discretion to the officer, room to exercise judgment as to whether and in what manner the mandate shall be carried out, if it be necessary to hear the evidence to determine whether the mandate has been performed, then the mandate, in such form, for the performance of a ministerial act, is imperfect and irregular, and is of that character to be rendered where judicial action is ordered. Ex rel. Harrell, 59 Ala. 321; Davidson v. Washburn, 56 Ala. 596." Troxell v. Moody, 200 Ala. 203, 75 South. 961.

[5, 6] A declared nominee of his party, where the matter is not duly controverted—as by pending contest or appeal to the executive committee of the party—may compel the discharge of the ministerial duty in printing the official ballot. The primary election laws are to be found in General Acts 1915, p. 218 et seq. The pleadings on mandamus dealt with a pending contest and full submission by both parties to the contest to the jurisdiction and powers of the state Democratic executive committee. And if it be held that the subcommittee had only the jurisdiction, under the primary election law, to hear and report (and this we do not admit under the relator's answer and special pleas), the final ratification by the state committee and certificate of its chairman authorized the action of the probate judge in printing the ticket with the name of Coma Garrett, Jr., as the Democratic nominee for probate judge. There was error in sustaining the demurrer of petitioner to answer and special pleas.

[7, 8] The right to vote is neither a property right, nor a right of person; it exists only as conferred by Constitution and statute. Therefore it is a political privilege which the Legislature may regulate to an extent not prohibited by organic law. Gougar v. Timberlake, 148 Ind. 38, 46 N. E. 339, 37 L. R. A. 644, 62 Am. St. Rep. 487. And on such principles are enacted the statutes regulating the form and preparation of the official ballot, fixing the time, and residence of the voter in the state, county, ward, or precinct in which he shall reside to be en-

---

[1] Post, p. 442, 100 South. 855.

titled to vote, prescribing the reasonable tests required of the voter, and 'reasonable 'regulations governing the holding of elections, etc. State v. Superior Court of King County, 60 Wash. 370, 111 Pac. 233, 140 Am. St. Rep. 925.

In State ex rel. Howells v. Metcalf, 18 S. D. 393, 100 N. W. 923, 67 L. R. A. 331, 338, the claim of a candidate for office to have his name printed in the regular party column was held to present a question of substantial right; that an organized political party "cannot have at the same time on the official ballot more than one candidate for the same * * * office," when there is but one incumbent therein; and that the Supreme Court had jurisdiction to control by mandamus the action of the county auditor in determining the names to be placed on an official ballot, where there is not sufficient time to enable the county judge, to whom the statute gives jurisdiction, to act, and have his action reviewed on appeal previous to the election. In that case, there were "two certificates of nomination on file in the auditor's office, each regular on its face, each containing a set of county candidates, and each purporting to have been nominated by the Republican party." 9 R. C. L. p. 1055, § 71.

[9] The interested parties, having submitted their cause by agreement to the arbitration of the party and to its subcommittee, were bound by the finding and certificate thereof by the committee through its chairman, Mr. Webb, to the judge of probate after the county committee had failed or refused to act in the premises. Gen. Acts 1915, p. 234, § 48 et seq.

[10] These statute provisions having application in this jurisdiction are based on the assumption that the bona fide acts and determination and certification by the proper authorities of an organized political party with respect to its nominations or selections as candidates for public office, are final and should be obeyed. Especially is this true under the averred facts of agreement and acquiescence sought to be set up in the answer and special pleas of respondent in the mandamus suit. The party's action, under such circumstances, in that behalf, duly certified to the judge of probate, must be regarded as the "acts of the electors constituting such organization" or political party expressing its choice in the primary for its nominee. When electors join in the party primaries in the nomination of a candidate (as did the instant parties for judge of probate of Clarke county), they act with that organization and are subject to its laws and ultimate decisions with respect to the nomination so made and certified. This is a reasonable construction of the several provisions of General Acts 1915, p. 218 et seq., and section 459 of the Code.

As stated, the tickets printed and distributed by the judge of probate as the official ballot containing the name of Coma Garrett, Jr., were in accordance with the declared and certified law of the Democratic party and pursuant to the statutes having application in so far as insisted upon by the contestant and contestee, or not raised by them. It follows that the votes cast, appropriately marked in the circle and under the Democratic emblem, with no mark before the name of the candidate and where the name of Coma Garrett, Jr., was not stricken off by the elector, should have been counted for said Garrett. However, the evidence shows if such ballots were counted for Judge Garrett, or deducted from Judge Cuninghame's majority, the result would be that the latter received a majority of the votes cast.

It is recited in appellant's brief that the trial court found 1,376 votes were cast for Garrett and 1,592 were cast for Cuninghame; that, of the votes cast for the latter, 9 votes (7 in beat 1, and 2 in box 2 of beat 13) had the choice of the elector indicated by writing the name of James G. Cuninghame upon the bottom of the ballot and by making the required cross-mark in front of same. It is also recited in that brief:

"This record shows that all the ballots received by James G. Cuninghame at said election other than the 9 just above mentioned were received by the voter making a cross-mark in front of the name of Cuninghame where the same was stamped with the rubber stamp at the bottom of the ticket after the last name under the Democratic column on said ticket, there being 1,583 ballots cast for Cuninghame in this way. In beat 4 Cuninghame received 9 ballots on which his name was stamped at the bottom of the Democratic column and a cross-mark made at Cuninghame's name with no erasure of appellant's name, and 32 with the name of Cuninghame stamped as above with a cross-mark in front of it with the name of Coma Garrett, Jr., erased from said ballot. In beat 5 Cuninghame received 28 with his name stamped at the bottom and a cross-mark in front, and 5 marked the same way except that Garrett's name was erased from the ballot. In a number of other beats Cuninghame's ballots were marked in one or the other of these methods."

This general insistence by appellant's counsel is sufficient to bring us to an answer of the inquiry, whether or not the election was so conducted as to the election of the judge of probate as to vitiate the same or change the declared result. The evidence shows that about half of the tickets given out to electors were stamped under the Democratic emblem and at the bottom of the ticket as follows:

| For Judge of Probate (Vote for One) | ( ) Jas. G. Cuninghame |
| --- | --- |

Tickets so stamped and those (not so stamped) printed with the name of Coma Garrett, Jr., as the nominee, were respective-

ly given to electors as they requested, or as they were known to be for the one or the other of the candidates, respectively, or as the voter declared he desired, on inquiry by an election official as to what ballot he desired, that for Cuninghame or for Garrett, as the case was. The majority of the ballots indicating the choice of Cuninghame were so stamped and marked X in the space before his name.

The several rulings of the trial court on the contest that will be here considered are:

"The petitioner then renewed, separately and severally, each motion heretofore made in reference to the ballots in each separate voting place or box: (1) That the ballots in said box on which Cuninghame's name was stamped with a rubber stamp at the foot of the Democratic column, and a cross-mark made in front thereof, and Garrett's name scratched from the printed part of the Democratic column; that said ballot be not counted for Cuninghame; and (2) also move the court, separately and severally, as to each voting place or box, that the ballots found in said box, with Cuninghame's name stamped at the foot of the Democratic column with a rubber stamp, and a cross-mark in front of the name of Cuninghame, and the name of Coma Garrett, Jr., not scratched or erased from the printed column, be not counted for said Cuninghame; and petitioner also moved the court that each and every ballot found in said boxes, where the name of Cuninghame is stamped at the foot of the Democratic column, with no cross-mark in front of the name of said Cuninghame, and the name of Coma Garrett, Jr., scratched out in the printed column, and a cross-mark made in the circle under the Democratic emblem, be not counted for Cuninghame. In other words, the petitioner raised the point separately as to each ballot, and also renewed the motion as to all ballots in either of said boxes, whereon Cuninghame's name was stamped at the foot of the Democratic column, and with no cross-mark in front thereof, Coma Garrett, Jr.'s, name not scratched from the printed column, and no cross-mark in front thereof, but a cross-mark in the circle under the Democratic emblem, be counted for Garrett.

"And the court, separately and severally, overruled each of the motions here made, and thereupon the contestant, separately and severally, excepted to the action of the court in overruling each of said motions."

To a decision of the foregoing rulings on motions 1 and 2 we must examine the several statutes governing the holding of elections, declaring results thereof, and providing for contest of same.

It is provided that, if an elector desires to vote for each and every candidate for one party for whatever office to be nominated, he shall indicate the same by making a cross-mark (X) "in the circle under the name of the party at the head of the ticket." Code, § 381. Provisions relative to voting for one candidate not on the party ticket are contained in section 382 of the Code, or for two or more candidates on different tickets. Code, § 384,

or when straight ticket does not contain the names of all officers, Code, § 385, or to voting for a person whose name is not on a ballot, Code, § 386, which reads as follows·

"If the elector desires to vote for any person whose name does not appear upon the ballot, he can so vote by writing the name in the proper place on the blank column."

It is also provided by statute that an elector can vote blank for any office on the ticket by making a cross (X) mark in the circle at the top of the ticket "and striking out with pencil or pen the name or names of candidates he does not desire to vote for on the ticket." Code, § 387.

The provisions of section 414 of article 12 of the chapter on "Elections," Code, p. 346, indicate how the count of the vote shall be made, and to which we will advert.

Section 414 of the Code has been given consideration by this court, to the effect that votes may be counted, though not numbered as provided by law, when the choice of the elector can be ascertained from the ballot and there is no complaint of "evil practice" as to such omission. Montgomery v. Henry, 144 Ala. 629, 39 South. 507, 1 L. R. A. (N. S.) 656, 6 Ann. Cas. 965. And in Black v. Pate, 130 Ala. 514, 30 South. 434; Id., 136 Ala. 601, 34 South. 844, it was held that when the cross-mark is made on the right-hand side of the ticket, and after the name of the candidate, such a ballot should be rejected and not counted for the person whose name is opposite the mark thus made.

The statute contains ample provision for contesting an election for the causes specified in subsections 1 to 5, inclusive, section 455 of article 22, p. 358, of Code. However, when section 456 of the Code is construed with section 455 and other provisions of the statute as providing a harmonious system for securing the free and unbiased expression of the elector's choice in representative government and in the selection of a public officer, it will be noted that section 456 is a qualification or limitation of provisions of section 455 of the Code. It is declared that, notwithstanding the grounds of contest, no malconduct, fraud, or corruption of officers holding the election can set aside any election unless the person declared elected be shown not to have received the highest "number of legal votes, nor must any election contested under the provisions of this Code be annulled or set aside because of illegal votes given to the person whose election is contested, unless it appears that the number of illegal votes given to such person, if taken from him, would reduce the number of votes given to him below the number of legal votes given to some other person for the same office. Nor must any election be annulled or set aside because of the rejection of legal votes unless it appears that such legal votes, if given to the person intended, would increase the number

of his legal votes to or above the number of legal votes received by any other person for the same office." Code, § 456.

The case of Patton v. Watkins, 131 Ala. 387, 31 South. 93, 90 Am. St. Rep. 43, construed section 1668 of the Code of 1896, which is the same as section 456 of the Code of 1907, now under consideration. Mr. Freeman, in his comprehensive note on Patton v. Watkins, supra, reported in 90 Am. St. Rep. 43, 49, said the trend of American authority is summed up in this statement:

" 'All the provisions of the election law are mandatory if enforcement is sought *before* election in a direct proceeding for that purpose; but *after* election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.' Jones v. State, 153 Ind. 440, 55 N. E. 229. The same doctrine has been expressed in numerous decisions. See, especially, Taylor v. Taylor, 10 Minn. 107; Russell v. McDowell, 83 Cal. 70, 23 Pac. 183; Fowler v. State, 68 Tex. 30, 3 S. W. 255." (Italics supplied.)

The Patton-Watkins Case, supra, held that irregularities in conducting the election and in marking the ballot of illiterates were not sufficient to vitiate the election, where the exercise of discretion by the voter was not interfered with by the marker. The distinction between mere irregularities and vitiating acts of managers of election is pointed out. It was there said:

"Dereliction in respect of official duty pertaining to election may be of such kind as to render the culpable officer amenable to penal laws without affecting the validity of votes cast under his ministration, and this principle applies to the irregularities imputed to official misconduct of the sheriff and of the managers at this election."

See, also, 40 L. R. A. (N. S.) 535 et seq.

In Brunson v. Dobbs, 202 Ala. 603, 81 South. 545, that statute was again construed and the declaration made:

"It is manifest from the quoted part of the statute that the lawmakers contemplated that, notwithstanding the rejection of legal votes, the result of the election should not be disturbed unless the party deprived of said legal votes would have been elected by the legal votes cast, including said rejected votes."

It is not necessary to advert to the general authorities on the subject. However, in Chamberlain v. Wood, 15 S. D. 216, 88 N. W. 109, 56 L. R. A. 187, 91 Am. St. Rep. 674, under what is known as "the Australian ballot law," the holding was that the Legislature (in matters left open by the Constitution) represented the will of the people in requiring the names of all candidates for office to be printed upon the official ballot; yet the right of voters to write on their ballots the names of candidates not printed thereon, and desired to be voted for, was denied. This construction was successfully challenged by Mr. Freeman in an exhaustive note in 90 Am. St. Rep. at page 49. However, the South Dakota statute contained no provision for writing the name of any qualified person upon the ballot, other than that printed thereon, as is specifically provided by our statutes (sections 381–387 and 414 of the Code of 1907).

It has been held, in states which have adopted the Australian ballot system, or its modified form as was done in Alabama, that errors of the election officers in preparing for the election and in printing the ballot, etc., should not invalidate the election or prevent the ballots cast from being counted when the elector's intention was given free expression in casting his ballot, and when that intention can be ascertained from the ballot as cast. Allen v. Glynn, 17 Colo. 338, 29 Pac. 670, 15 L. R. A. 743, 31 Am. St. Rep. 304, 311; Bowers v. Smith, 111 Mo. 45, 20 S. W. 101, 76 L. R. A. 754, 33 Am. St. Rep. 491; Boyd v. Mills, 53 Kan. 594, 37 Pac. 16, 25 L. R. A. 486, 42 Am. St. Rep. 306; People ex rel. Bradley v. Shaw, Board of Canvassers, 133 N. Y. 493, 31 N. E. 512, 16 L. R. A. 606; State of Florida ex rel. Lamar, Atty. Gen., v. Dillon, 32 Fla. 545, 14 South. 383, 22 L. R. A. 124; Cole v. Tucker, 164 Mass. 486, 41 N. E. 681, 29 L. R. A. 668; R. C. L. p. 1054, § 70.

[11] Through all the cases is recognized the principle that a voter should not be disfranchised by rejection of his ballot, in whole or in part, when it is clear that he made an honest effort to comply with the law and has substantially complied with its mandatory requirements. Such are our decisions. Black v. Pate, 130 Ala. 514, 528, 529, 30 South. 434; 20 C. J. p. 154, § 184.

The general rule was given expression in our statute, providing how the count of the vote shall be made, declaring:

" * * * Nor shall any ballot be rejected for any technical error which does not make it impossible to determine the elector's choice, and nothing in the election law shall be construed so as to prevent any elector from voting for any qualified person other than those whose names are printed on the ballot." Code, 1907, § 414.

[12] We come to decide whether the election was so held, as to stamping and distributing the ballots, as to vitiate the declared result as to the election of the judge of probate.

Appellant's counsel concisely state what they consider the vitiating conduct relied upon, as follows:

"On the morning of the election the officers of same met and, with the rubber stamp which had been provided, stamped appellee's name and the office for which he was a candidate at the bottom of the Democratic column on the ballot. This stamp was placed on some ballots and left off of others. As the voters would come into the voting place and apply for ballots with which to vote, they were required by the election officers to choose between the ballot so stamped and the regular official ballot on which the rubber stamp had not been placed, thereby requiring the voter to publicly declare his choice before receiving a ballot from the inspectors."

If that conduct did not prevent a fair, free and full exercise of the elective franchise as to the office in question, the vote should not be rejected. That is, if the electors, in the free exercise of their choice, in voting placed or authorized (within the provisions of the statute) to be placed on the ballot the X before the name of Jas. G. Cuninghame for judge of probate, though the same was stamped on the bottom of the ticket, under the statute such ballots were properly counted, by election managers, for Cuninghame. Code, § 414; Wilkerson v. Cantelou, 165 Ala. 619, 51 South. 799.

When the trial judge came to hear the contest and to recanvass the returns, he was, no doubt, directed by the provisions of sections 414, 455, and 456 of the Code of 1907. Construed in pari materia, these sections on the contest of an election, are to the effect that (1) the election cannot be annulled or set aside unless "the person declared elected, and whose election is contested, be shown not to have received the highest number of legal votes" (Code, § 456); (2) that the election cannot be annulled or set aside "because of illegal votes given to the person whose election is contested, unless it appears that the number of illegal votes given to such person, if taken from him, would reduce the number of votes given to him below the number of legal votes given to some other person for the same office" (Code, § 456); (3) that the election cannot be annulled or set aside "because of the rejection of legal votes unless it appears that such legal votes, if given to the person intended, would increase the number of his legal votes to or above the number of legal votes received by any other person for the same office" (Code, § 456). And this is in consonance with the provisions as to counting the votes contained in section 414 of the Code, which we have set out above. This was the construction given the statute by Mr. Chief Justice Anderson in Brunson v. Dobbs, 202 Ala. 603, 81 South. 545.

Did the manner of the distribution of ballots by the election managers to the respective electors destroy the secrecy of the ballot so as to vitiate the election for probate judge? The trial court, on consideration of the documentary evidence with that given ore tenus, answered, in the judgment rendered, that it did not.

Judge Freeman, in 90 Am. St. Rep. 72, 73, 80, said of the general conduct of elections:

"While *before* an election all provisions of an election law are mandatory, if sought to be enforced, *after* an election is held they are held to be directory only, if this is possible. Jones v. State, 153 Ind. 440, 55 N. E. 229. This tendency to sustain elections is noticeable, and they are never held void, unless clearly illegal. State v. Board of Freeholders of Hudson County, 35 N. J. L. 269. It is, therefore, very generally held that the provisions of a statute as to the manner of conducting the details of an election are not mandatory, but directory merely, and irregularities in conducting an election and counting the votes, not proceeding from any wrongful intent, and which deprive no legal voter of his vote, will not vitiate an election, or justify the rejection of the entire poll of a precinct. Behrensmeyer v. Kreitz, 135 Ill. 591, 26 N. E. 704; Hankey v. Bowman, 82 Minn. 328, 84 N. W. 1002; Bailey v. Hurst (Ky.) 68 S. W. 867. As a general rule, mere irregularities in conducting an election, which do not affect the final result, do not vitiate such election (Sprague v. Norway, 31 Cal. 173; Piatt v. People, 29 Ill. 54; Behrensmeyer v. Kreitz, 135 Ill. 591, 26 N. E. 704; Gass v. State, 34 Ind. 425; Irwin v. Lowe, 89 Ind. 540; Gilleland v. Schuyler, 9 Kan. 569; Napier v. Cornett [Ky.] 68 S. W. 1076, Webre v. Wilton, 29 La. Ann. 610; People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451; McKinney v. O'Connor, 26 Tex. 5; Loomis v. Jackson, 6 W. Va. 613), the election otherwise being fairly and honestly conducted, and no legal voter is deprived of his franchise, or illegal votes received. * * * [Italics supplied].

"Where there is an entire disregard of conformity to the statute in holding and conducting an election, whether it is by design or ignorance, an entire election may be avoided. Melvin's Case, 68 Pa. St. 333. Hence, an election held in total disregard of the Australian ballot law is illegal and void (Gaston v. Lamkin, 115 Mo. 20, 21 S. W. 1100); for an election must be conducted substantially in the manner prescribed by law (Van Amringe v. Taylor, 108 N. C. 196, 12 S. E. 1005). * * *

"The calling of particular persons from the crowd to vote, in order to save time, is not such an irregularity as to invalidate an election, where it did not appear that any one did not vote or left the polling place on account of the delay. Bailey v. Hurst (Ky.) 68 S. W. 867. The fact that there was talk around the polls that no one would be allowed to vote unless he was reregistered will not vitiate an election, where no one was challenged on that ground, even though persons did not offer to vote because of this belief. People v. Prewett, 124 Cal. 7, 56 Pac. 619.

"Where a statute requires a vote to be taken viva voce, an election by secret ballot is absolutely void. Elliott v. Burke (Ky.) 68 S. W. 445. * * *"

The provisions of our Constitution (sections 179, 189, 190) and of the statute are to preserve the untrammeled expression of the

choice of the elector, to the end that no qualified elector be deprived of the privilege that is accorded by law to vote, and may freely and intelligently cast his or her vote under the Constitution and statutes. Among the provisions of law are those of section 179 of the Constitution, requiring that all elections by the people shall be by ballot, and those of the statutes (sections 381–406 of the Code of 1907), looking to the secrecy and sanctity of the official ballot. Had sufficient space been given on the ballot for the writing of the name, at the appropriate place, of another qualified person for the office of judge of probate than that printed thereon, there would have been no excuse for stamping the ballots as they were stamped, and no excuse to have inquired of the voter what kind of ballot was desired. Gen. Acts 1915, p. 222, § 16.

The judgment authorized to be rendered on contest of an election is in harmony with the construction given the foregoing statutes and the conclusion we announce. Code 1907, § 474.

Three of the ballots certified for inspection were unintelligible. If they be taken from Cuninghame, the result announced would have been unchanged. So, if the votes marked in the circle under the Democratic emblem be counted for Garrett, the result announced by the trial court would be unchanged. Code 1907, § 456.

Under the oral testimony given before the lower court, and the presumptions attending the judgment of that court, the same will not be disturbed.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.