FAULKNER, Justice
(Dissenting).
This case is part of an ongoing dispute between two factions of the ACIPCO Board of Trustees. See Farlow v. Adams, 474 So.2d 53 (Ala.1985). In 1924 all of ACIPCO’s stock was bequeathed to a board of trustees for the benefit of “employees and persons requiring the products of the company.” The Board of Trustees is composed of two factions, the Board of Management and the Board of Operatives. The Board of Management is comprised of the Executive Committee of the Board of Directors. The Board of Operatives consists of twelve ACIPCO employees elected by their peers.
In voting the stock of the company, each of the two boards votes as a unit. The vote of each group is determined by the majority of the members of each. The will which bequeathed the stock provides that if the two groups are unable to agree on any question the disputed question “shall be referred to the Board of Trustees, whose decision on said question shall be final.” A 1924 decision rendered by a Georgia court construed the foregoing language to mean that disputes between the two boards should be resolved by the Board of Directors. A subsequent decree rendered by a Jefferson County Circuit Court in an action brought by the trustees to obtain instructions as to the administration of the trust provided:
“1. The complainants, as trustees of the trust created by the codicil to the will of John J. Eagan, are entitled to apply for and to obtain instructions from this court as to their administration of said trust.
“2. The complainants, as trustees, have the right and authority in the proper management and conduct of said trust to adopt reasonable rules and regulations to govern the conduct of said trust and the actions of the complainants and their successors as trustees in the management and conduct of such trust.
“The rules and regulations adopted by complainants as such trustees are reasonable and proper rules and regulations to be adopted by them as such trustees and said rules and regulations are hereby in all things approved, and the complainants and their successors as such trustees are ordered to be governed and directed by said rules and regulations in their conduct of said trust.”
Section 12 provides, in part:
“Either the Board of Management or the Board of Operatives may direct the Secretary of the Board of Trustees to refer said question to the Board of Directors. The Secretary shall make such reference in writing. Any meeting of the members of the Board of Directors held for the purpose of deciding a question in dispute between the two units shall be presided over by an attorney authorized to practice law in Birmingham, Alabama, who is not a member of either the Board of Operatives or the Board of Management. Such presiding officer shall be paid a reasonable fee for his services. He shall be appointed by the presiding judge of the court having jurisdiction over this trust, which court is at the present time the Circuit Court of the Tenth Judicial Circuit of Alabama.”
*360 At the annual meeting of the Board of Trustees in January of 1985 the two factions failed to agree on certain questions. The chairman of the Board of Directors and the secretary of the Board of Trustees then filed a document in the Circuit Court of Jefferson County entitled “Application For Appointment of Attorney To Preside Over Meeting of Board of Directors of American Cast Iron Pipe Company.” The application was filed in the clerk’s office and given a case number. It does not name any adverse parties and it does not provide for service of process on anyone.
On the same day the application was filed, a document which purports to be an order was also filed in the clerk’s office. It states:
“The application for appointment to preside over a meeting of Board of Directors of American Cast Iron Pipe Company is this date considered and granted. The Honorable J.N. Holt is this date appointed by the court to preside over said meeting of the Board of Directors of American Cast Iron Pipe Company. Said appointment shall remain in effect for so long as the questions in dispute set forth in said application are before the Board, and until further relieved by order of this court. It is further directed that a copy of this order be sent to The Honorable J.N. Holt and the attorney of record for the applicant and the attorney for the Board of Operatives.”
“DONE AND ORDERED THIS 12th day of March, 1985.
“/s/ John N. Bryan, Jr. Presiding Judge”
Following entry of the order the attorney for the Board of Operatives received a copy of a letter addressed to Mr. Holt and signed by an attorney representing the Board of Management informing Mr. Holt of his appointment. The Board of Operatives then filed a motion seeking to have the order vacated on the grounds that the court lacked jurisdiction to make any such appointment and that if it had such authority the Board of Operatives was entitled to notice and an opportunity to be heard. Judge Bryan entered an order overuling the motion. This petition followed.
All parties in this dispute agree that the appointment of Mr. Holt was a non-judicial duty on the part of Judge Bryan. The petitioners state in brief that “Circuit Judges In Alabama do not have jurisdiction to serve as non-judicial appointing authorities in private disputes.” The respondents state that the appointment was a neutral private act of Judge Bryan as an individual who happened to be the presiding judge at that time. And Judge Bryan, who is front stage and center of this proceeding, stated in his order of March 26, 1985:
“It was further my opinion [in 1984] that the act of appointment was required by the codicil to the will of John J. Ea-gan, which had been approved by prior court order and, therefore, had the force and effect of a court order. It was further concluded that the act of appointment was not a judicial act, as such, and that any person or entity could have been designated to make such appointment.
“It is still felt the act of appointment is a ministerial act and not a judicial act. Issues between these parties must be decided by a court of law and not by the entity obligated to make the appointment. The mere act of making the appointment in no way is an act which attempts to adjudicate any issue between the parties, only the carrying out of a prior ruling of court which from aught appears to remain in force and effect.” (Respondent’s Answer, Exhibit A, pp. 2-3).
So, even though the parties and the judge agree that the act of appointing was non-judicial, are the petitioners entitled to mandamus to have the judge’s order set aside? We who dissent answer that question by asking a question. If Judge Bryan as presiding judge had failed to appoint an attorney, would either side be entitled to mandamus to compel the presiding judge to appoint an attorney in a situation such as we have here? We opine that they would be entitled to the writ. Mandamus can be *361 directed to a public official to command him to carry out his public, official, or ministerial duty. Where a ministerial duty is imposed by law upon an official, mandamus will lie in the absence of some other adequate remedy. Cf. State v. Laurendine, 74 So. 370, 199 Ala. 312 (1917), and Garrett v. Cuninghame, 100 So. 845, 211 Ala. 430 (1924).
By virtue of the 1942 circuit court order, the presiding judge could be commanded by this Court to perform the act of appointing an attorney to preside over a meeting of the Board of Directors. As Judge Bryan aptly stated, this is a ministerial act — not a judicial act. But, it is an act required to be performed by the presiding judge — whoever that happens to be at the time of application. Thus, by appointing the attorney to preside over the meeting, he was carrying out his duty.
The only other issue worthy of note is that of notice. We observe that Section 12 provides that in the event the Board of Management and the Board of Operatives fail to agree on any question, the dispute may be referred to the Board of Directors. (Either Board in the event of a dispute may direct the Secretary of the Board of Trustees to refer the question to the Board of Directors.)
At the meeting of the two Boards held on January 28-29, 1985, they disagreed on several questions. The disagreement then, according to Section 12, fell in the lap of the Board of Directors. The Chairman of the Board filed an application for the appointment of an attorney to preside over the meeting of the Board of Directors. This was done also pursuant to Section 12.
We fail to see how either Board (Management or Operatives) could complain about any lack of notice. Both attended the meeting where disputes arose. Each is held to know the rules, and neither Board could question the presiding judge’s appointment other than as the question might regard the requirement that the appointee must be authorized to practice law in Birmingham and must not be a member of either Board. Moreover, on March 11, 1985, P.W. Green, Secretary of the Board of Trustees, gave notice to the members of both Boards that an application would be made pursuant to the rules, to the presiding judge of the tenth judicial circuit for the appointment of an attorney to preside over a special meeting of the Board of Directors to resolve the disputes. We opine that the petitioners had notice, and that their complaint is without merit.
The majority makes the bizarre statement that the members of the Board of Operatives “are entitled to notice and an opportunity to appear and participate in the appointment of an attorney provided for in such Rules and Regulations.” Section 12 does not provide for any notice to members of either Board when an attorney is appointed by the presiding judge. How would they participate? The appointing judge has only two conditions to observe— i.e., the attorney must be authorized to practice law in Birmingham and not be a member of either Board. Additionally, the majority overlooks an important record fact in this case: Neither Board objected to the appointee, J.N. Holt. Finally, if the Board of Operatives is entitled to notice from the court, would the Board of Management also be entitled to notice? The majority does not say — will this Court have that momentous question to answer next?
The majority creates an exercise in futility and a waste of judicial manpower. We would deny the writ.
ALMON and HOUSTON, JJ., concur.