This is an appeal from an order of the Circuit Court of Mobile County granting a motion to dismiss the action of election contestants. We affirm. *Page 1341 
The City of Prichard held an election on August 10, 1976 to fill, among others, the offices of mayor and five councilmen. All of the plaintiffs, with the exception of Yancina Stallworth Douglas, were candidates for office in that election. Under Tit. 37, § 34 (68), Alabama Code (Recomp. 1958), they initiated a contest of the elections of the defendants who had been declared elected to those offices, alleging numerous separate grounds of contest.
We will not attempt to set out all of the pleadings, which were many, but only so much as appears to be necessary to focus upon the principal issues before us.
Motions to strike portions of the complaint were granted by the trial court, after which plaintiffs filed an amended complaint, striking one party-plaintiff and adding additional grounds of contest. Again, motions to strike were granted, leaving the following grounds of contest:
. . . . .
 7. The election of A.J. Cooper, Jr., Freddie Harris, John L. Myrick, John Langham, John Sanderson, and Shafter Summers, separately and severally, are each contested upon the following grounds:
. . . . .
 E. That illegal votes were cast for the following named candidates by persons who were not qualified voters in that they were not bonafide resident citizens of the City of Prichard, Alabama, within the time prescribed by law prior to the date of said election, to-wit:
(1) A.J. Cooper, Jr.
(2) Freddie Harris
(3) John L. Myrick
(4) John Langham
(5) John Sanderson
(6) Shafter Summers
 F. That illegal votes were cast for the following named candidates by voters who were or may have been bonafide resident citizens of the City of Prichard, Alabama, but were not duly qualified electors in that they were not properly registered as voters in accordance with the laws of the State of Alabama, to-wit:
(1) A.J. Cooper, Jr.
(2) Freddie Harris
(3) John L. Myrick
(4) John Langham
(5) John Sanderson
(6) Shafter Summers
 G. That legal votes for contestant candidates and other candidates were rejected and illegal votes were given to the following named candidates for the offices set opposite their respective name which, if taken from him and legal votes added to other candidates, would reduce the number of legal votes given to the defendant candidates, separately and severally, below the number of legal votes necessary and required to have the defendant candidates declared winners of the races set opposite their names, to-wit:
(1) A.J. Cooper, Jr., Mayor
(2) Freddie Harris, Councilman, Place One
(3) John L. Myrick, Councilman, Place Two
(4) John Langham, Councilman, Place Three
(5) John Sanderson, Councilman, Place Five
(6) Shafter Summers, Councilman, Place Four
. . . . .
 (1) They allowed persons who were not qualified voters to cast illegal votes;
 (2) They allowed persons who were duly challenged by a qualified elector to vote on the voting machines in violation of Title 37, Section 34 (39) of the Code of Alabama;
. . . . .
 (4) They fraudulently and willfully disposed of challenged ballots;
. . . . .
 (8) They fraudulently and negligently allowed qualified and unqualified voters to vote more than one time in said election;
 (9) They refused to accept or allow voters who were duly qualified to vote in violation of the laws of the State of Alabama;
. . . . . *Page 1342 
 (22) They unlawfully failed or refused to record the legal votes cast for the contestant candidates herein and other candidates;
 (23) They unlawfully recorded illegal votes for the defendant candidates herein;
. . . . .
The defendant Cooper moved to prevent the City of Prichard from opening the ballot boxes and voting machines which had been used in the election, and the trial court granted a temporary restraining order accordingly. A petition for a writ of mandamus was then filed in this Court seeking to compel the vacation of that order, and the proceeding in the trial court was continued pending our action on that petition. After this Court denied that petition, the trial court, which had custody of the machines, granted the motion to intervene of the Judge of Probate of Mobile County. That official sought the release of fifty of the voting machines which had been used in the contesting election. After making certain findings, which we quote below, the trial court granted this motion:
 The court finds that the voting machines used in said election are so constructed that the only information which may be obtained from the machines are the total votes cast on the machines, the total votes cast on the machines subsequent to resetting its counters to zero, and the votes cast for each candidate or propositions voted on since the last time the counter was reset to zero, and the names of any write-in votes cast subsequent to clearing the write-in register; that all of the above information may be retained by the court without physical retention of the voting machines by means of physically reproducing the printouts and inspecting the write-in register and recording the reading of the total vote counter, and proper operation of the machine at this time can be determined by voting on said machine one vote for each candidate; that upon obtaining this information from each of the 50 voting machines used in said election, there will be no further need for this court to retain custody of said voting machines.
 The court further finds that the said voting machines were physically transported from the polling places where used in said election to the voting machine warehouse of Mobile County, Alabama, on August 11, 1976; that they were received there sealed with no evidence of their having been tampered with in any manner, and that said machines have been physically stored in the city voting machine warehouse since that date; that the boxes and any other equipment, supplies or paraphernalia have remained in actual possession of the City Clerk of the City of Prichard, Alabama. The court being of the opinion that all of the aforesaid items should be impounded by the court and preserved pending this election contest, and the court being of the opinion that substantial justice will be done and no inconvenience will be caused the parties by the release of the voting machines to the Probate Judge of Mobile County, Alabama, after preserving the information contained therein as hereinabove set forth.
 It is ORDERED, ADJUDGED AND DECREED, that John E. Mandeville as Clerk of the Circuit Court of Mobile County, Alabama, forthwith take into his possession and control all of the voting machines, boxes, equipment, supplies, and paraphernalia used by the City of Prichard in conducting said municipal election in the City of Prichard, Alabama, on August 10, 1976, and all City officers, clerks, employees, agents, and servants, and any other persons having possession or control of any of these items turn over and release to the said John E. Mandeville, all such items in their possession or under their control.
 It is further ORDERED, ADJUDGED AND DECREED that John E. Mandeville, upon receipt by him of sufficient supplies to do so furnished by the Probate Judge of Mobile County, Alabama, shall proceed to record all information presently shown on each of the said voting machines, including the voting machine *Page 1343 
number and the number on the seal locking said machine against voting, that he shall then cast one additional vote for each of the candidates in said election and shall again record the counter readings, and shall reseal each such machine against further voting thereon; that the said John E. Mandeville shall then seal the information so obtained, and shall store the same with the other items herein impounded, and shall secure all such items pending further order of this court.
Meanwhile, on September 23, 1976 the defendant Cooper moved to have a hearing date set on the election contest, and on the same date moved for an order that the plaintiffs furnish to the defendants:
. . . in writing, the number of illegal votes and by whom given and for whom given, and at what precinct or voting place cast, or the number of legal votes rejected, and by whom offered, and at what precinct or voting place cast, which he expects to prove on the trial.
Much of the language of this motion is taken from Tit. 17, § 237, Alabama Code (Recomp. 1958).
On September 24, 1976 the trial court set November 1, 1976 as the hearing date and ordered the plaintiffs to furnish the requested information "on or before October 15, 1976," (within twenty-one days).
Later, on October 8, 1976, plaintiffs moved for a preliminary hearing date in order to allow them to "present evidence in support of the allegations made in their complaint," and attached affidavits in support of this motion. On that date plaintiffs also filed a motion to require the opening of the voting machines and election supply records on the ground "that it is necessary in the presentation and prosecution of their case. . . ." Both of these motions were denied.
The defendants then moved to dismiss the action on the ground that the plaintiffs had failed to comply with the trial court's order requiring plaintiffs to furnish the witness list in accord with the provisions of Tit. 17, § 237. After argument in open court, this motion was granted with prejudice on October 29, 1976.
The plaintiffs have ascribed several errors to the trial court on this appeal, all of which depend upon the propriety of his ruling granting the defendant's motion to dismiss. If it was necessary in this election contest to furnish such a witness list as defendants requested and as the court ordered, the failure to provide it, in the sound discretion of the trial court, would have justified a dismissal with prejudice. Rule 41 (b), ARCP allows such action for "failure of the plaintiff to . . . comply with . . . any order of court." In considering the trial court's action, it is relevant to note that when the pending motions were heard on October 29, 1976, three days before the date set for the hearing on the merits and thirty-five days after the trial court had ordered the information to be furnished, counsel for plaintiffs stated to the court that it was impossible for them to furnish those names without getting into the voting machines and voting records in order to ascertain that information. Moreover, plaintiffs declined an offer of a continuance by the trial court and additional time within which to comply with the order. So we have this situation: the trial court had impounded the voting machines and records, and had ordered the plaintiffs to furnish the names of the legal and illegal voters they expected to prove at the trial. Plaintiffs had subpoenaed eighty-three witnesses for the hearing three days later, and had previously requested a preliminary hearing to present evidence. They maintained that they could not comply with this order without an examination of those very machines and records which, they contended, contained such information and which the trial court would not allow them to examine in order to comply. In short, they did not possess this information at the time the contest was filed and at the time the defendants' motion to dismiss was granted. Was it fundamental to their contest that such a list be furnished by them?
It is undisputed that Tit. 37, Chap. 3A, Alabama Code
(Recomp. 1973 Supp.) governing certain municipal elections is applicable *Page 1344 
here. Section 34 (68) of that Title specifies five causes upon which a qualified elector may contest such an election:
 1. Malconduct, fraud, or corruption on the part of any election official, any marker, the municipal governing body, or any other person.
 2. When the person whose election to office is contested was not eligible thereto at the time of such election.
3. On account of illegal votes.
4. On account of the rejection of legal votes.
 5. Offers to bribe, bribery, intimidation, of [sic] malconduct calculated to prevent a fair, free, and full exercise of the elective franchise.
That section, in addition, makes it plain that ". . . all proceedings relative to contests of elections to municipal offices shall be governed by the provisions of articles 22 and 23, chapter 1, Title 17, Code of Alabama, 1940, insofar as they are applicable."
Annulments of elections, however, are limited by the provisions of § 34 (69):
 No malconduct, fraud, or corruption on the part of the election officers, the marker, the municipal governing body, or other person, nor any offers to bribe, bribery, intimidation or other malconduct which prevented a fair, free, and full exercise of the elective franchise, can annul or set aside any municipal election unless thereby the person declared elected, and whose election is contested, be shown not to have received the requisite number of legal votes for election to the office for which he was a candidate, nor must any election contested under the provisions of this chapter be annulled or set aside because of illegal votes given to the person whose election is contested, unless it appears that the number of illegal votes given to such person, if taken from him, would reduce the number of votes given to him below the requisite number of votes for election. Nor must any election be annulled or set aside because of the rejection of legal votes unless it appears that such legal votes, if given to the person intended, would increase the number of his legal votes to or above the requisite number of votes for election.
These statutes, which we consider in pari materia, establish clearly that election contests which turn upon the number of legal or illegal votes cast or rejected, subsume Tit. 17, Art. 23, § 237, Alabama Code (1958 Recomp.) which requires the notice of the nature of the evidence. Without that written notice having been served upon the adverse party by the contesting party ". . . at least ten days before the taking of testimony in reference to such votes," as that statute requires, "[n]o testimony must be received of any illegal votes, or of the rejection of any legal votes. . . ."
The legislature has made Tit. 17, § 237 a constituent part of the procedure for engaging in an election contest when either illegal votes or the rejection of legal votes is in issue. Thus, the defendants were within their rights to demand the production of the notice described therein, since under those allegations the motion required is mandatory. Dobbs v. Brunson,17 Ala. App. 318, 85 So. 38 (1920). We are not concerned here with a situation in which there is no question as to which candidates received the most votes, cf. McGallagher v. Bosarge,273 Ala. 133, 136 So.2d 181 (1961), rather we are concerned with allegations of malconduct which charge illegal voting, the unlawful rejection of legal votes, and the fraudulent disposal of challenged ballots.
The annulment of elections under Tit. 37, § 34 (69) requires either proof of illegal votes, rejected legal votes, or the failure of the contestee to receive the requisite number of legal votes. In other words, other instances of election law violations under § 34 (69) may not be used to annul or invalidate a municipal election. In this case, for example, plaintiffs have alleged, inter alia, that the defendants "fraudulently and willfully disposed of challenged ballots." Clearly, this is an allegation of *Page 1345 
fraudulent malconduct, but it does not charge either of the three grounds for annulment listed under § 34 (69). Errors and irregularities of election officers which are shown not to affect the election result will not be considered in a municipal election contest, otherwise legal voters would be deprived of their franchise. Pope v. Howle, 227 Ala. 154,149 So. 222 (1933); Montgomery v. Henry, 144 Ala. 629, 39 So. 507
(1905).
The legislature having mandated the notice, could plaintiffs comply with the trial court's order thereunder without being allowed to examine the voting machines and election supply records? In their motion to have the machines and election supply records opened, plaintiffs did not allege more than that "it is necessary in the presentation and prosecution of their case that this motion be granted." The record is silent on any proof related to the grounds of annulment to support this assertion. As we have already pointed out, plaintiffs contended that they could not furnish the voter information without this examination.
Plaintiffs did object to the findings of the trial court on the information which would be revealed by an inspection of the voting machines, but these findings are supported by the evidence adduced at the hearing of September 24, 1976. From that hearing the trial court found that the information which the machines would reveal consisted of the total votes cast, the total votes cast after the counters were reset to zero, the votes cast for candidates or propositions since the counters were reset to zero, and the names of write-in votes cast after clearance of the write-in votes cast after clearance of the write-in register. This information was ordered recorded and preserved, and reasonably would be encompassed in the plaintiff's motion for inspection of the records which the trial court denied. Certainly the votes cast for candidates and the names of write-in votes cast not only would be relevant, but would be material in proving that a person whose election was contested did not receive the requisite number of legal votes, as required by § 34 (69). Even though proof of the number of votes cast would not prove illegal voting by any individual voter, any more than it would prove the rejection of any individual legal vote, still it would directly apply to therequisite number of legal votes required by the contestees.
Moreover, with the one exception to which we have previously alluded, that is, the fraudulent and willful disposition of challenged ballots which did not pertain to a ground specified in § 34 (69), plaintiffs alleged only illegal votes and the rejection of legal votes as grounds to annul this election. The written notice of Tit. 17, § 237 specifically applies to those grounds, and as we have shown, these grounds would not have been aided by an inspection of the machines and their contents. Clearly, upon this record, the trial court properly concluded that plaintiffs could not "offer testimony" on the issues of this contest, after first allowing plaintiffs twenty-one days (from September 24, 1976 to October 15, 1976), then fourteen additional days (until October 29, 1976 when the final order of dismissal was ordered). The trial court even offered a continuance of twenty days from October 29, 1976.
Although Tit. 17, § 237 does place a deadline of ten days prior to the taking of testimony for the service of the notice, this section cannot have been intended to prevent a trial court from recognizing in advance of the statutory deadline the inability or unwillingness of the complaining party to comply.
Therefore, the order of the trial court to produce the written notice was a proper one, and under the facts disclosed the sanction of dismissal with prejudice was not improper. Indeed, having chosen to follow Tit. 37. § 34 (68), (69), and having selected the very grounds of contest to which the written notice applies, it does not appear that plaintiffs could have amended their complaint in such a way as to restate the *Page 1346 
grounds alleged as the bases for their contest without also being required to comply with the notice required by Tit. 17, § 237. Jefferson v. Greater Anchorage Area Borough, 451 P.2d 730
(Alaska 1969); Feinberg v. Leach, 243 F.2d 64 (5 Cir. 1957).
Finally, plaintiffs argue that the fraudulent manner in which this election was conducted was sufficient to require the trial court to exercise its equity powers and declare the election void, even if they might be unable to prove that the result would have been different after deducting "illegal votes" from the declared winning candidates and adding rejected "legal votes" to the losing candidates. The plaintiffs cite Bouldin v.City of Homewood, 277 Ala. 665, 174 So.2d 306 (1965) for this proposition.
With deference to plaintiffs, Bouldin does not support that position. Bouldin dealt with an annexation election in which the statutory election notice was not properly published. In considering whether any equity jurisdiction existed authorizing injunctive relief to prevent one municipality from transferring property to another, this Court compared the restrictions of Tit. 17, § 235 with the pleadings, and held that a temporary injunction should have issued because:
 Where as here, illegality of the election is charged, and the interests of individuals comprising the public are affected, and the rights and property of the city . . . are affected, as well as the misuse of corporate power, . . . equity did have jurisdiction.
. . . . .
No such allegations are made here. In fact, plaintiffs' amended complaint states that:
 1. The election contest is filed pursuant to the provisions of Title 37, Section 34 (68) of the Code of Alabama, 1940 . . . and the other sections of the Code . . . cited therein. The alternative action to declare the election null and void is brought under the general equity jurisdiction of this Court. (Emphasis supplied.).
Nowhere is it alleged, as was alleged in Bouldin, that the interest of individuals was put in jeopardy, nor was there any allegation of corporate abuse of power as therein referred to. The case of Wakefield v. Town of Carbon Hill, 215 Ala. 22,108 So. 855 (1926), cited by plaintiffs, expressly found that no statutory means of contesting elections existed at that time. That is far from the situation here, as we have shown. Not only do contestants of municipal elections have legal remedies under Tit. 37, § 34 (68), (69) and (72), but Tit. 37 is replete with statutory penalties for those who offend the municipal election laws, e.g., § 34 (58), (59), (60), (61), (62), (63), (64), (65), (66) and (67). In short, we discern nothing in the allegations which would have allowed the trial court to exercise equity powers aliunde Tit. 17, § 235, which states:
 No jurisdiction exists in or shall be exercised by any judge . . . exercising chancery powers to entertain any cause . . . for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be . . . specifically enumerated . . . by statute. . . .
We cannot agree with plaintiffs that it is this Court's duty to oversee elections and to prescribe the duties and obligations of election officials. However abhorrent the conditions described are to us personally, nevertheless those are clearly legislative matters. It is this Court's duty to respect and preserve the separation of governmental powers, not to act unilaterally as self-appointed ombudsmen. Contests of elections are statutory creations, except insofar as we have noted, and the statutory requirements must be strictly complied with. Longshore v. City of Homewood, 277 Ala. 444,171 So.2d 453 (1965); Black v. Pate, 130 Ala. 514, 30 So. 434 (1920);Pearson v. Alverson, 160 Ala. 265, 49 So. 756 (1909). To the suggestion that equity has the general power to review the conduct of *Page 1347 
an election, therefore, we must point out that "equity follows the law." Moulton v. Reid, 54 Ala. 320 (1875).
AFFIRMED.
TORBERT, C.J., MADDOX, FAULKNER and SHORES, JJ., concur.