TORBERT, Chief Justice
(concurring specially).
I concur in the resolution of the issues addressed by the majority of this Court, but write separately on what I consider to be the issues critical to a speedy, final determination of this important affair of state. These issues were presented to the trial court in the petition before it, and were clearly presented and addressed in briefs of both Appellant Baxley and Appel-lee Graddick.
The courts of this state have been called upon almost continuously, since shortly before the second Democratic primary held on June 24, 1986, up to these instant proceedings, to become involved in this controversy. In addition, the jurisdiction of the *694 federal judicial system was invoked to resolve matters within its jurisdiction under the Federal Voting Rights Act of 1965.[1]
Perhaps the best summary as to the jurisdiction and role of state courts in primary election contests is set forth in the case of Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974), in an opinion by Justice Merrill, joined by Justices Harwood, Maddox, McCall, and Faulkner:
“The Legislature has given the handling of political party nominations to the several political parties, even to the decision as to whether the party will nominate its candidates by primary elections or conventions. Tit. 17, § 336 [Ala.Code 1940].
“To insure that political parties would not be bothered in the handling of their nominating elections and the contests arising therein, as well as other elections of persons to office, courts have no jurisdiction except that ‘specially and specifically enumerated and set down by statute.’ Tit. 17, § 235. This court has followed the statute in Ex parte Skidmore, 277 Ala. 221, 168 So.2d 483, and the cases therein cited.
“In effect, the Legislature has said that political parties can run their party affairs without interruption by the courts, but those affairs must be run within the rules laid down by the Legislature.
“One of the reasons for this rule in election contests is that time is of the essence in an election contest. The party committee, or its subcommittee, can act more speedily than the courts and can devote its time to one contest, where [whereas] the courts are occupied with all types of litigation.
“The right to contest an election is given by virtue of the statutes and ‘it must be instituted and presented within the “jurisdiction” etc., and as prescribed by law, and by a person so authorized.’ Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845.
“In Pearson v. Alverson, 160 Ala. 265, 49 So. 756, the court stated:
“ ‘Election contests are special statutory proceedings, and, according to the best authorities, which .have been followed by our own court, are to be strictly construed as to those provisions for inaugurating the contest, and which are necessary to jurisdiction. A short time limit is fixed, because it is important that such matters should be determined as speedily as possible for the public good. It is accordingly held that, if the petition is defective as to any of the statutory requirements, it cannot be amended after the expiration of the time limited for commencing the contest. To construe the law otherwise would render the time limit of the statute ineffective. The giving of security according to the statute is also a jurisdictional requirement....’
[[Image here]]
“... If the committee or the chairman fail or refuse to follow the mandates of the statutes, the only recourse of either the contestant or the contestee is to the courts. In such cases, the courts are open.
“The court was open to both the candidate and the committee in Butler v. *695 Amos, 292 Ala. 260, 292 So.2d 645, where both parties sought a construction and application of § 47, Constitution of Alabama 1901. The courts were also open to the candidate and the committee in Hobbie v. Vance, 292 Ala. 367, 294 So.2d 743, where one of the main questions was the construction and application of the liner statute, Tit. 17, §§ 18, 19, when that statute had been misconstrued in an opinion of the Attorney General requested by the candidate.”
Perloff, 293 Ala. at 279, 281; 302 So.2d at 94-96.
This Court and our trial courts have acted promptly on matters presented by the various parties to this contest. The second (or runoff) primary election was held June 24, 1986, and the two contests were filed and proceedings commenced within the time frame allowed by law. Delays in the proceedings were occasioned by the action of both principal parties by asking for a continuance before the committee (Baxley) and by the initiation of court actions (Grad-dick).
In an effort to conclude the involvement of our courts in this matter, this Court entered an order (on July 29, 1986) requiring the trial court to “forthwith issue a judgment on the merits of the petition of Charles A. Graddick filed in that court on July 24, 1986.” The order required the trial court to conclude the case on the merits no later than 5:00 p.m. on July 31, 1986. The trial court, under obvious time constraints, held a hearing on the merits on the morning of July 31, 1986, and entered its judgment that afternoon finding in favor of Graddick. Appeals were taken to this Court that same day. The appeals were expedited, briefs were filed, and the case submitted August 6, 1986. Oral argument was requested, but denied by a majority of this Court. Because of the importance of these matters, it is my view that oral argument was appropriate so that both the parties and the Court could more clearly define the issues and the arguments. Accordingly, the decision of this Court is rendered without benefit of oral argument.
“The right to vote in a democracy is among the most precious of all individuals’ rights. It is a mechanism which individuals can and do use to hold officeholders accountable even when other parts of the political process fail to produce accountability. For one’s vote, when cast, to be translated into a true message to officeholders and candidates, that vote must be accurately counted, and if necessary, recounted at every stage of the. election process. The moment an individual’s vote becomes subject to error in the vote tabulation process, the easier it is for one’s vote to be diluted.”
1 Institute for Research in Public Safety, Indiana University School of Public and Environmental Affairs, Contested Elections and Recounts: The Federal Perspective, 3 (1978).
Our legislature has, over the years, enacted laws to insure a fair, free and full exercise of the elective franchise. Corrupt practices have been defined and sanctions provided, Code 1975, § 17-22-1 through § 17-22-15. Criminal offenses have been established and penalties prescribed, Code 1975, § 17-23-1 through § 17-23-11.
The legislature has carefully constructed a statutory scheme to insure that an accurate vote count is obtained in order to give full effect to one’s right to vote. Code 1975, § 17-16-31 and -32; Code 1975, § 17-13-1 through § 17-13-11. See also, Code 1975, § 17-14-20 through § 17-14-27.
Having taken great pains to insure an accurate, valid count of the votes in an election, the legislature by statute has provided for election contests. Code 1975, § 17-16-70 through § 17-16-89 (applicable to primary elections).
The intent of the legislature is clear. Six grounds for the contest of the nomination by a political party are specifically set-out by law. Code 1975, § 17-16-71(1) through (6). The legislature further provided that where the contest involved the receipt of illegal votes or the rejection of legal votes, no testimony (evidence) shall be received unless the complaining party has given to *696 the adverse party five (5) days written notice “of the number of illegal votes and by whom given, for whom given and at what precinct or voting place cast, or the number of legal votes rejected, by whom offered and at what precinct or voting place they were not allowed to be cast, which he expects to prove on the trial.” Code 1975, § 17-16-79.
From the record in this appeal, it is plain that one of the determinative issues raised by this contest involves the interpretation and application of the notice provisions of Code 1975, § 17-16-79. This is the issue as to illegal votes cast. My review of the record, as well as the briefs, shows that each party to this contest, including the subcommittee itself, recognizes this issue. It appears to me that the legislature intended, and our cases clearly hold, that § 17-16-79 is to be strictly construed and applied. Carter v. Wiley, 406 So.2d 340 (Ala.1981); Turner v. Cooper, 347 So.2d 1339 (Ala.1977).
I believe that there is a logical relationship between the sufficiency of the evidence necessary to prove an election contest and the sufficiency of the notice required. An intent to require specific evidence can be gleaned from the fact that under Code 1975, § 17-16-87, the party must hold a new election in the event the committee is unable to decide who was the legally nominated candidate. Apparently, the legislature concluded that it was preferable to have another election than have the outcome of the contested election determined on inconclusive, insufficient, or contradictory evidence.[2]
Therefore, a vote that has been counted for a person declared nominated should be nullified only upon evidence proved to the reasonable satisfaction of the body trying the contest that the particular person or persons voted illegally and for whom that person or persons voted. To state it plainly, the committee trying the contest, on the basis of illegal votes cast, should simply be sure that the person initially declared to be the winner of the runoff election did not receive the number of legal votes necessary for nomination.
It follows that the written notice of the evidence that the contestant intends to present in order to prove the illegal votes must be specific.[3] There is no point in conducting a contest hearing seeking to declare someone else the nominee if the contestant is unable to provide the notice of the testimony or evidence which is required to nullify the allegedly illegal votes. Turner v. Cooper, supra.[4]
*697 That is not to say that the inquiry of the committee in this contest must necessarily be ended. As previously noted, the legislature wisely provided by law that on the hearing of any contest of any election, if the committee determines it is not possible from the evidence before it to decide who is the legally nominated candidate, it has the right and authority to direct a new primary election for the nomination to that office. Code 1975, § 17-16-87. Thus, it appears to me that the legislature has given the authority to a political party to call a new election on the basis of malconduct under § 17-16-71(1), (5), or (6) where such mal-conduct so tainted an election as to prevent the party from making a determination as to the legally nominated candidate.
HOUSTON, J., concurs.

. Immediately prior to the June 24 runoff election, actions were filed in the Circuit Courts of Jackson and Mobile Counties. The central purpose of both of those actions was to obtain rulings on the legality of crossover voting. Neither of the judgments obtained was appealed.
On July 11, 1986, an action was filed seeking to quash the subpoenas issued by the Democratic Party committee. On July 18, 1986, the order quashing the subpoenas was reversed by this Court.
On August 1, 1986, the federal district court in Henderson v. Graddick, 641 F.Supp. 1192 (M.D.Ala.1986), found that Graddick had violated the Voting Rights Act of 1965 and declared that Graddick could not be certified as the nominee based on the June 24 runoff election.
On July 24, 1986, Graddick filed an action seeking a temporary restraining order to stop the taking of depositions by Baxley and to stop the Democratic Party from holding a hearing in the contest. The order granting the restraining order was reversed by this Court on July 29, 1986. The order deciding the merits of the action filed July 24 is the subject of these appeals.

.It should also be noted that the United States District Court for the Middle District of Alabama, in Henderson v. Graddick, 641 F.Supp. 1192 (M.D.Ala.1986), was also concerned with the necessity of obtaining an accurate count. That court was concerned with the issue of the proper remedy when a violation of the Voting Rights Act of 1965 occurs. It noted, "Because the right to vote is so important, the possibility that the results of an election were changed as a result of illegal votes is enough to justify ordering a new election." The court declined to grant the relief requested by the plaintiffs. Plaintiffs sought to have the crossover votes purged on the theory that this would result in the election of Mr. Baxley. While the court noted that it was for the contest committee of the Democratic Party, and not the court, to determine the winner of the election, it is also reasonable to assume that the court's conclusion that it was "impossible for this Court to determine precisely how many crossover votes were cast, and, of course, it is impossible to know how many of these were cast for Mr. Graddick and how many for his opponent, Mr. Baxley," played a role in deciding the appropriate remedy.

. There is no merit in the contention that § 17-16-79 precludes discovery of evidence pri- or to the giving of the notice required by that section. Clearly, that section only prohibits the committee from receiving testimony, and does not prohibit the parties from discovering evidence.

. Mr. Baxley argues that the wrongful conduct of Mr. Graddick prevents Mr. Baxley from satisfying the requirements of § 17-16-79. "Should this court agree with Graddick that vote-by-vote testimony of all 13,000 illegal voters must be introduced, the court in effect would say that nor [sic] effective challenge can be brought against one who is massively successful in encouraging illegal voting.” Baxley brief, p. 25. As discussed below, while such conduct may prevent success in a contest that seeks to have someone else declared the nominee, it does not necessarily prevent success in a contest that seeks a new election.