MADDOX, Justice
(concurring specially).
Even though the majority opinion sets out many of the facts and addresses several of the jurisdictional issues, I file this separate opinion to state my views regarding the present posture of this particular election contest.
This case involves two primary election contests of the results of the Democratic gubernatorial runoff held June 24, 1986, and whether the State Democratic Executive Committee (SDEC) and its Subcommittee, composed of defendants Baker, Blount, Boggan, Kellett, and Knight, have jurisdiction to hear and determine the contests.
The specific issues are:
(1) Whether the two election contests were filed within 24 hours after the “public declaration” of the second primary election, as required by Code 1975, §§ 17-16-35 and 36.
(2) Whether the SDEC could appoint a subcommittee to hear and determine the contests.
(3) Whether the SDEC heard the contests not less than 10 nor more than 20 days after the election contests were filed, as required by Code 1975, § 17-16-85.
(4) Whether the contestants complied with the provisions of Code 1975, § 17-16-79, which provides, in part, that “No testimony shall be received of any illegal votes or of the rejection of any legal votes in any contest commenced under the provisions of this article unless the party complaining thereof has given to the adverse party notice in writing of the number of illegal votes and by whom given, for whom given, and at what precinct or voting place cast, or the number of legal votes rejected, by whom offered and at what precinct or voting place they were not allowed to be cast, which he expects to prové on the trial.”
(5) Whether the contestants can prove at any future hearing of the contests that alleged “illegal votes” affected the outcome of the second primary election by use of opinion and polling evidence.
(6) Whether the federal Voting Rights Act applies to a decision of this Court which construes the primary election laws of the state and the rules and regulations promulgated by the SDEC adopted under authority of state law.
The trial court made no findings of fact, but in its order entered pursuant to this Court’s mandate in Ex parte Baxley, docket no. 85-1242, July 29, 1986 (unpublished order), “that the Circuit Court of Jefferson County shall forthwith issue its judgment on the merits of the petition of Charles A. Graddick filed with that court on July 24, 1986, no later than 5:00 p.m. on July 31, 1986,” did enter an order in which he made a finding, in part, as follows:
“The Court finds in favor of the Plaintiff, Charles A. Graddick, and against Defendants, John Baker, individually and as Chairman, State Democratic Executive Committee; State Democratic Executive Committee, a body politic; Charles Kennith Pike; Nellie Kent Pike; William J. Baxley; William B. Blount; Jack Bog-gan; Franklin Kellett; John Knight; and Alabama Democratic Party.”
Even though the trial judge made no specific findings of fact based upon the evidence presented before him on July 29, 1986, and July 31, 1986, in connection with *698 this proceeding, the tendencies of the evidence are as follows:
In the second Democratic primary election, held on June 24, 1986 (the “runoff”), contestee Charles A. Graddick received 470,051 votes, and contestant William J. Baxley received 461,295 votes according to the accounting firm retained to achieve the vote tally. The SDEC retained the accounting firm of Coopers & Lybrand to conduct a tally of the votes cast in the runoff. The managing partner of Coopers & Lybrand was present at the City Council Chambers in the Birmingham City Hall on Saturday, June 28, 1986, when about 1:30 p.m. he presented the official vote tally to defendant John Baker, chairman of the SDEC, which tally contained the votes cast in the runoff for the gubernatorial race: 470,051 for Graddick; 461,295 for Baxley. On that day, representatives of the Baxley campaign, the Graddick campaign, and the media were present in the City Council chambers. After being presented with this vote count by Coopers & Lybrand, Baker stated the results of that race at approximately 1:30 p.m., June 28, 1986. A news reporter present testified at the hearing, as follows:
“Q. What if anything did Mr. Baker do with the results?
“A. Mr. Baker approached one of the tables below where the council sits, and opened up a binder, and read a statement in which he declared the results that the accountants had come up with to be the official results of the runoff election.”
On Monday, June 30, 1986, a subcommittee of the SDEC met in the Secretary of State’s office in Montgomery. According to the minutes of their meeting, which have been signed by all the members of this subcommittee and certified by the Secretary of State, this subcommittee was appointed for the “purpose of supervising the holding of the Democratic Party elections * * * including the canvassing of and the declaration of the results * * * and the certification of nominees.” The minutes, in part, state that the subcommittee, “[D]oes now publicly declare the results of said Primary Elections to all offices, except County Offices, to be as shown in the Tabulation of Returns attached hereto and made a part hereof by reference.”
The tabulation attached to the minutes shows that no results were given for the gubernatorial runoff. These minutes did contain the official vote count established by Coopers and Lybrand in the runoff for the candidates for the lieutenant governor’s race: 517,724 for Folsom; 382,836 for Teague.
The record does not disclose precisely when or how the subcommittee to hear the election contests was appointed, but Baker testified that he appointed a subcommittee to declare the election results in the gubernatorial runoff and that this subcommittee declared the results of the election in the office of the Secretary of State on June 30, 1986. Baker, as chairman of the SDEC did appoint defendants William B. Blount, Jack Boggan, Franklin Kellett, John Knight, and himself, as chairman, to a subcommittee for hearing the election contests (the “Subcommittee”).
The Rules of the Democratic Party provide in Art. VIII, Sec. 2, that the filing of a statement of contest is deemed complete when personally delivered to the Chairman and that he shall endorse thereon the date it is filed with him. The contest of Charles Kennith Pike and Nellie Kent Pike was delivered by their attorney to Baker at the City Council chambers in Birmingham at 10:28 a.m. on Saturday, June 28, 1986; Baker endorsed thereon the date and time. The contest of William J. Baxley was filed at 9:30 a.m. on July 1, 1986. On July 3, 1986, the Pikes filed an amendment to their contest, which added additional grounds of contest not alleged in their initial filing.
On July 1, 1986, a preliminary meeting in the contest matter was held in Montgomery, at which hearing counsel for Baxley,. the Pikes, and Graddick were present. Baker presided at this meeting. At this meeting, the first hearing was set for July 14, 1986. At this meeting on July 1, Grad-dick filed a motion to dismiss both contests for failure to file within the statutorily *699 prescribed twenty-four hours after the public declaration, weekends excluded. Grad-dick also filed a motion to dismiss based upon the failure of the contestants to challenge the alleged illegal votes prior to, or in conjunction with, their being cast.
Graddick filed six motions for relief on July 10, 1986, in which he contended (1) that the contestants had failed to serve on him, within five days of the scheduled July 14 hearing, a written notice of the number of illegal votes and by whom cast, for whom cast, and at what place cast, that they expected to prove, as required by § 17-16-79, Code 1975, and (2) that the subcommittee could not conduct the July 14,1986 hearing. At the commencement of the July 14, 1986, hearing, Graddick objected to the hearing on the grounds that he had not been served with the five-day notice. The hearing consisted of opening statements by counsel and the limited testimony of each of the contestants as to his/her name, address, voting place, and other qualifications to bring the contest. Prior to the close of the hearing, Graddick objected to an adjournment.
In his opening statement at this hearing, attorney Johnson, counsel for contestant Baxley, stated in part: “We are strictly talking about illegal votes ... so when we talk about party registration and we talk about the real issues involved in this case, we should keep an eye on this fact, that we are only talking about illegal voting ... and we will prove that the crossover vote affected the outcome of the election.”
Attorney Still, co-counsel for Baxley, was called to the stand by Baxley to testify at the hearing in this case held before the trial court on July 31, 1986. On cross-examination, he testified:
“Q. (MR. McWHORTER) But it is your position, is it not, that this alleged mal-conduct resulted in the casting of illegal votes?
“A. (MR. STILL) Yes.
“Q. That’s the bottom line, isn’t it?
“A. That’s right. Charles Graddick went out and told people they could vote illegally and they did.
« * * *
“Q. And with respect to illegal votes, do you conceive as a lawyer that motive has anything to do with the illegal votes?
“A. The motive of the person casting the illegal vote?
“Q. Yes.
“A. No, it doesn’t have anything to do with it. A vote’s illegal if it’s illegal. “Q. That’s right. And motive has nothing to do with it, does it?
“A. Not on the part of the person casting the ballot.
“Q. And whatever outside impetus resulted in the casting of the illegal vote, the vote is nevertheless illegal, is that your position?
“A. It is illegal if it’s contrary to law; that’s correct.
“Q. Irrespective of whatever operated to create the casting of that vote?
“A. That’s right.”
At the July 14, 1986, contest hearing, Baxley filed a motion to continue. Grad-dick objected to this motion. The motion was granted and the contest was continued from July 21 to July 28 to allow Baxley, as stated in his motion, more time to develop the evidence of the number of alleged illegal votes.
Baxley requested the issuance of deposition subpoenas for depositions to take place on July 23, July 24, and July 25. Graddick filed a motion to quash these subpoenas, or, in the alternative, for a protective order on the ground that the five-day notice required by § 17-16-79 to be given before any testimony may be taken in reference to alleged illegal votes had not been given. This motion was denied. Graddick also filed a motion to stay these depositions until Baxley presented substantial evidence to show that there were enough alleged illegal votes to make a difference in the outcome of the election. This motion was denied. Baxley then rescheduled the depositions to commence on July 24, 1986.
A substantive hearing on the election contests was set for July 28, 1986. Grad-dick contended that compliance by contest *700 ants with the five-day notice provision would require service of that notice on him on Wednesday, July 23, and that no such notice was served on July 23, or even thereafter. Graddick contended that, as of that date, the SDEC had refused to rule on any of his motions relating to the failure of the contestants to supply the five-day notice prior to the taking of testimony at a hearing in reference to alleged illegal votes, and had ruled that the taking of testimony by deposition could go forward without the notice having been given. He further contended that the contestants had never served or presented any notice of the evidence expected to be produced in support of the grounds of their respective contests.
Graddick filed his “Verified Petition for a Temporary Restraining Order, Writ of Prohibition And Other Extraordinary and Equitable Relief” (the “Verified Petition”) on Thursday morning, July 24, 1986, before the Honorable Jack Carl, and requested the following relief:
“REQUEST FOR GENERAL RELIEF
“D. Issuing an appropriate writ of mandamus, or writ of prohibition, or other appropriate order, directed to the SDEC and the Subcommittee to compel them to dismiss the contests or to prohibit them from hearing the contests on the grounds that each are without jurisdiction to hear and determine the contests for any or all of the following reasons:
“(1) The Pike contest, the Baxley contest and the amendment to the Pike contest, separately and severally, were not filed within 24 hours of the public declaration of the results of the runoff;
“(2) No substantive hearing has been held not less than 10 nor more than 20 days from the filing of the respective contests;
“(3) There is no legal authority for these contests to be heard by the Subcommittee, and the SDEC has held no hearing not less than 10 nor more than 20 days from the filing of the respective contests;
“(4) Neither the SDEC nor the Subcommittee has any power or authority to proceed with the contests because the contestants have failed to comply with the five-day notice requirement.
“ALTERNATIVE SECONDARY REQUEST FOR RELIEF
“E. Alternatively, and only in the event the relief in foregoing paragraph ‘D’ is denied, the plaintiff respectfully prays for an appropriate order, judgment and decree finding and ordering:
“(1) That the contestants must comply with the provisions of § 17-16-79 by giving to Graddick written notice of the specific number of alleged illegal votes and by whom given, for whom given, and at what voting place cast at least five days before the contestants can proceed to present any evidence of their alleged grounds of contest or any evidence respecting illegal votes in any way;
“(2) That if contestants intend or seek to prove any alleged illegal votes in these election contests, they must provide the written notice specified by the provisions of § 17-16-79;
“(3) That the contestants have the burden in this election contest of proving the alleged illegal votes on an individual, vote-by-vote basis and are not permitted under the law of Alabama to prove such alleged illegal votes by expert opinion testimony based on polling, statistics, or the like;
“(4) That the contestants are not entitled to proceed with the scheduled depositions until five (5) days after effecting service of the notice required by § 17-16-79.”
A separate proceeding concerning the gubernatorial election had been filed in the United States District Court for the Middle District of Alabama, Henderson v. Graddick, 641 F.Supp. 1192 (1986 M.D.Ala.). The court, in that case, entered an order which read, in part, as follows:
“In accordance with the memorandum opinion entered contemporaneously herewith, it is ORDERED, ADJUDGED and DECREED:
“1. That a plaintiff class of all black, registered voters who voted in both the *701 June 3 Democratic primary and June 24 Democratic runoff is hereby certified.
“2. That by preventing the Democratic party of Alabama from enforcing its rule prohibiting crossover voting in the June 24, 1986, gubernatorial runoff and by actively encouraging the violation of the Democratic Party’s anti-crossover rule without first receiving ‘preclearance’ of such actions, defendant Charles Grad-dick violated Section 5 of the Voting Rights Act of 1965.
“8. That defendant Charles Graddick and his successors are hereby enjoined from seeking to administer any change in the Democratic Party rule prohibiting crossover voting without following the procedures prescribed by Section 5 of the Voting Rights Act for effecting such a change.
“4. That the Alabama State Democratic Executive Committee and John Baker are hereby enjoined from certifying Charles Graddick as the Democratic gubernatorial nominee based on the results of the June 24, 1986 Democratic runoff.
“5. That the State Democratic Executive Committee and John Baker are man-datorily enjoined and directed to order a new runoff election between Mr. Grad-dick and Mr. Baxley unless the Democratic Party determines pursuant to its procedures and the stringent rules under Alabama law for an election contest that Mr. Baxley received the majority of the legally cast votes in the June 24 runoff.
“6. That if a new runoff election is held, no person who voted in the June 3 Republican primary will be allowed to vote, and the following procedure will be used by all election officials to determine who shall be allowed to vote:
“(1) Each voter shall be asked, ‘Did you vote in the Republican primary on June 3?’
“(2) If the answer is ‘Yes,’ that person shall not be allowed to vote in the Democratic runoff.
“(3) If the answer is ‘No,’ that person shall be allowed to vote.
“(4) If the voter refuses to answer, he shall not be allowed to vote because he is refusing to comply with the rules of the Democratic Party.
“(5) If a person who is not allowed to vote for refusal to answer insists upon voting in violation of state law and Democratic Party rules, he may vote a challenge ballot if requested.
“This Court hereby retains jurisdiction of this case to award any further or other relief that is necessary. For the purpose of determining costs and attorney’s fees, this cause is remanded to the one judge initiating district court.” (Emphasis added..)
In brief, on this appeal, Graddick states:
“The time for post-trial motions has not yet run in that action. The conduct attributed to Graddick in Henderson was based upon legal conclusions which Grad-dick rejects, factual findings which are in sharp dispute; and the case, of course, was decided upon a civil standard of proof on an accelerated hearing schedule.”
I have done extensive research on the question of whether the contests were timely filed, whether the SDEC could appoint a subcommittee to hear the contest, and whether the hearing was held as required by law, and I am of the opinion that there is some merit in each, if not all, of these claims, but I do not address them; however, by not addressing them, I do not concede that the statutory requirements were met. This is the first proceeding in which the jurisdictional claims of the con-testee have been presented before a court. This Court has been called upon to decide some peripheral questions, and while the validity vel non of the “crossover rule” itself, and the jurisdictional claims now presented here were made before the subcommittee, and are contained in some of those .proceedings, we are far down the road now, and many events have intervened, including a decision in Henderson v. *702 Graddick, wherein the “crossover rule” was the crucial issue.
At this stage of the proceedings in this case, and in order to decide the issues in this appeal, I am of the opinion that implicit in the federal case of Henderson v. Graddick is a conclusion that the subcommittee has jurisdiction to hear the contest.
Graddick’s counsel advises that the time for filing post-trial motions in that action has not expired. If not changed or vacated by an appeal, that order is very explicit, and holds that Graddick cannot be the nominee, as a result of the June 24 election, the one here involved, but that Baxley could be declared the nominee. The Court specifically held:
“That the State Democratic Executive Committee and John Baker are mandato-rily enjoined and directed to order a new runoff election between Mr. Graddick and Mr. Baxley unless the Democratic party determines pursuant to its procedures and the stringent rules under Alabama law for an election contest that Mr. Baxley received the majority of the legally cast votes in the June 24 runoff.” (Emphasis added.)
I assume the “stringent rules” referred to in the order of the Henderson court are the requirements of Alabama law applicable when an allegation of “illegal votes” is the basis of the contest, as is the case here — specifically, the requirements of Code 1975, § 17-16-79, which states:
“No testimony shall be received of any illegal votes or of the rejection of any legal votes in any contest commenced under the provisions of this article unless the party complaining thereof has given to the adverse party notice in writing of the number of illegal votes and by whom given, for whom given and at what precinct or voting place cast, or the number of legal votes rejected, by whom offered and at what precinct or voting place they were not allowed to be cast, which he expects to prove on the trial.”
That the requirements of § 17-16-79 should apply, and would be applied, by the subcommittee hearing the contest is shown by statements of counsel for the contestants and the SDEC, but the parties are in sharp disagreement as to whether the contestants must introduce “vote-by-vote” evidence, which they admit is a physical impossibility, or can use “survey evidence,” to prove that Baxley won the June 24 election because he received the most “legal” votes.
The contestant in an election contest must give notice to the contestee of the nature of the legal votes wrongfully disallowed or illegal votes wrongfully counted, in accordance with Code 1975, § 17-16-79. Cf. Carter v. Wiley, 406 So.2d 340 (Ala.1981); Turner v. Cooper, 347 So.2d 1339 (Ala.1977).
The parties have stated in their briefs that Mr. Baxley intends to use survey evidence to fulfill the requirements of § 17-16-79. Because of this very important jwr-isdictional dispute in this case, and at this point in time, there is a “justiciable controversy” which the trial court and this Court have jurisdiction to decide.
I am of the opinion that the United States District Court necessarily recognized the possibility that the contestants could not prove an accurate count, and, in its order set forth the guidelines for the conduct of another election.
My view of the Alabama law, I believe, is consistent with the order issued in Henderson v. Graddick, which, if not vacated on appeal, or otherwise changed by that court, must be enforced.
I would address the question of the legal effect of § 17-16-79, under the peculiar facts of this case, and in view of the particular stage of this proceeding. '
As this Court said in Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974):
“The court was open to both the candidate and the committee in Butler v. Amos, 292 Ala. 260, 292 So.2d 645, where both parties sought a construction and application of § 47, Constitution of Alabama 1901. The courts were also open to the candidate and the committee in Hobbie v. Vance, 292 Ala. 367, 294 So.2d 743, where one of the main questions *703 was the construction and application of the liner statute, Tit. 17, §§ 18, 19, when that statute had been misconstrued in an opinion of the Attorney General requested by the candidate.
“The courts were open to Perloff, the announced nominee, when on July 10, 1974, he was notified that a subcommittee had been appointed to hear Buskey’s contest. Two days later, Perloff filed his petition for writ of prohibition in the circuit court raising the point of lack of jurisdiction.” 293 Ala. at 281, 302 So.2d at 96.
This Court, in this contest, directed the lower court to rule on the merits of the Graddick complaint, which included a request involving the legal effect of § 17-16-79, and how proof could be made of alleged “illegal votes.” While the parties disagree about the legal effect of § 17-16-79, each requests that we decide it. That is the reason I would decide it. A resolution of that issue would materially speed up a resolution of this controversy, and that would be in the best interest of all the parties and the people of Alabama, and would be consistent with the settled principle of law that election contests should be speedily decided.