Jimmy Paul Cochran appeals from a judgment annulling his election to the office of mayor of the Town of Bakerhill. We reverse and remand with directions.
On August 24, 2004, the Town of Bakerhill held an election for mayor. The candidates were Cochran and Aaron Grubbs. The day after the election, Cochran was officially declared the winner by one vote. Specifically, it was declared that Cochran had received 85 votes and that Grubbs had received 84 votes.
On August 30, 2004, Grubbs filed a "verified contest of election" pursuant to Ala. Code 1975, § 11-46-69 et seq., and § 17-15-20 et seq. The complaint contained the following pertinent averments:
 "5. That the basis of said contest is that there was misconduct, fraud or corruption on the part of an election official of the Town of Bakerhill;
 "6. Or in the alternative, that legal ballots (votes) were rejected.
 "7. And finally, that if the subject ballots are deemed proper, then these are more than sufficient to change the results of the subject election."
(Emphasis added.)
On September 14, 2004, Grubbs filed a "notice of nature of evidence" ("the notice"). The notice stated, in toto:
 "COMES NOW the Plaintiff, Aaron Grubbs, by and through counsel, and hereby gives notice pursuant to § 17-15-21[,] Code of Alabama 1975[,] to the Town of Bakerhill, Otis Banks, in his position as Absentee Election Manager, and Jimmy Cochran, Mayor-Elect of the Town of Bakerhill, and offers the following:
 "A. 1. That four (4) legal votes were rejected. *Page 448 
 "2. That the subject votes were submitted by [M.L.H.], [D.M.], [M.M.,] and [B.L.]
 "3. That the subject votes were offered at the main polling point, that being the Town of Bakerhill Town Hall.
 "B. 1. That at least one (1) illegal vote was counted twice.
 "2. That the subject votes were duplicates of one another submitted by unknown electors of the Town of Bakerhill.
 "3. That the subject votes were offered at the main polling point, that being the Town of Bakerhill Town Hall."
Trial of the contest began on September 27, 2004. At the beginning of the proceedings, the following colloquy occurred:
 "[Cochran's counsel]: Your Honor, I filed a motion to strike this morning.
 "[The court]: What are you trying to strike?
 "[Cochran's counsel]: I think we've agreed upon everything. It is just to clean up the pleadings and all. In his original pleadings, he alleged corruption, fraud, and misconduct on the part of a polling official. The polling official [has] been dismissed. And then there is also an allegation that was contained in his [notice of] nature of evidence that was provided to [Cochran] in this case to which he claims there is an illegal ballot, one illegal ballot, that was counted twice.
 "When we received our notice of evidence, there [were] no specifics as required by the § 17-15-21 statute, and also by the authority of Carter v. Wiley [, 406 So.2d 340 (Ala. 1981)]. And I don't believe those issues are before the court, or properly before the court, because he didn't give us the specifics of the one ballot.
 "It is our contention that the only issues today before this court are whether or not the four absentee ballots that he alleges should be counted are [B.L.'s, D.M.'s, M.M.'s, and M.L.H.'s]. It is our contention that . . . the only issues before this court today is to determine the validity of whether or not they were illegal votes or whether they were illegally rejected.
 ". . . .
 "[Grubbs's counsel]: I would ask that [the court] reserve ruling on that until after the hearing, and then I think there will be sufficient evidence for [it] to decide one way or the other about that.
 "[The court]: That's probably reasonable."
(Emphasis added.) The trial then proceeded.
On October 4, 2004, the trial court annulled the election and ordered the Town of Bakerhill to conduct a new election. More specifically, the court stated:
 "This cause having been submitted to the court on the pleadings, testimony taken ore tenus, evidence introduced during the trial, and the briefs and arguments of counsel, the court finds the following:
 ". . . .
 "At the conclusion of the evidence, closing arguments and following the submission of briefs, this court determines that [M.L.H., D.M., and B.L.] were registered voters and residents of Bakerhill, Alabama, on August 24, 2004, having been such more that Thirty (30) days prior to the election. That they received applications for absentee balloting along with the actual Absentee Ballot simultaneously. That said Applications were submitted in proper form to the Absentee *Page 449 
Election Manager and would have been received in a timely fashion had the Absentee Election Manager not been absent from the office on the last three business days prior to the week of the subject election, without securing a properly trained alternate, thus leaving said office vacant. That the subject electors subsequently mailed their absentee ballots, without accompanying Affidavit, to said Manager, who clearly was not adequately or properly trained. That due to negligence, misconduct, fraud and/or corruption on the part of the Absentee Election Manager, and/or others without proper authorization acting in his stead, Absentee Affidavit envelopes were not provided to the subject voters, which prevented a fair, free and full exercise of the elective franchise, and following testimony that the said [M.L.H., D.M., and B.L.] had attempted to vote for Aaron Grubbs, it is the decision of this court that although [M.L.H.'s, D.M.'s, and B.L.'s] votes could not be added to Grubbs's total to declare him the winner, the fact that they were entitled to vote and would have had their votes counted but for the negligence, misconduct, fraud and/or corruption, can be considered in determining `the requisite number of legal votes for election to the office for which he was a candidate.' Applying the principle found in Jacobs v. Ryals, 401 So.2d 776 (Ala. 1981), a total of 172 votes would represent those who participated or would have participated in the election. In order to be declared the winner of the election, a candidate would have had to receive a majority vote of that number, i.e., 87 votes. Cochran received 85 votes to Grubbs's 84 votes, neither candidate receiving the requisite number of votes.
 "Therefore, it is ORDERED, ADJUDGED and DECREED that the Municipal Government of the Town of Bakerhill order a new election, insofar as it pertains to the Mayor's election, in a manner provided by law."
(Emphasis added.) Cochran appealed.
Of the four ballots that the notice alleged were wrongly rejected, only three remain at issue on appeal. It is now uncontroverted that M.M. was ineligible to vote in the election. Also, there remains no issue regarding "duplicate" votes, or the double counting of votes. Thus, the only ballots at issue are the absentee ballots cast by M.L.H., D.M., and B.L. The trial court rejected those ballots, which represented votes for Grubbs. Nevertheless, by adding those voters to the vote tally, it concluded that neither candidate had received "the requisite number of votes" for election and refused to declare Cochran the winner.
Cochran contends that the trial court erred in denying his motion to strike all issues of "misconduct, fraud, or corruption on the part of an election official," as alleged in the complaint. Cochran's brief, at 11. Alternatively, he insists that the trial court had no authority to order a new election. We first address the motion to strike.
 I. Cochran's Motion to Strike
In Cochran's written motion to strike, which he filed the morning of trial, he argued, in pertinent part:
 "Comes now the defendant, Jimmy Cochran, . . . and files this Motion to Strike . . . and moves this Honorable Court to Strike the allegations of misconduct, fraud, or corruption on the part of an election official and shows as follows:
 "1. Pursuant to the strict requirements of Ala. Code, § 17-15-21, and Carter v. Wiley, 406 So.2d 340
(Ala. 1981), a party filing an election contest
must *Page 450 
provide via his Notice of Nature of the Evidence his allegations of misconduct, fraud and corruption on the part of the election official.
 "[2]. The plaintiff's complaint and Notice of Nature of the Evidence fails to state the specific facts concerning the allegations of misconduct, fraud, and corruption on the part of an election official. . . .
 "WHEREFORE, premise considered, the defendant, Jimmy Paul Cochran, requests that this court strike the allegations of misconduct, fraud, and corruption contained in the plaintiff's complaint. . . ."
(Emphasis added.) Thus, he argued in the trial court, as he does here, that Grubbs failed to comply with § 17-15-21 and with cases applying that Code section.[1]
Section 17-15-21 provides:
 "No testimony must be received of any illegal votes or of the rejection of any legal votes in any contested election commenced under the provisions of this article unless the party complaining thereof has given to the adverse party notice in writing of
the number of illegal votes and by whom given and for whom given, and at what precinct or voting place cast, or the number of legal votes rejected, and by whom offered, and at what precinct or voting place cast, which he expects to prove on the trial. Such notice must be served personally or left at the residence or usual place of business of the adverse party at least 10 days before the taking of testimony in reference to such votes."
(Emphasis added.)
Section 17-15-21 applies to elections of municipal officials.Turner v. Cooper, 347 So.2d 1339, 1344 (Ala. 1977); Pope v.Howle, 227 Ala. 154, 149 So. 222 (1933). Strict compliance with this section is mandatory. Turner, 347 So.2d at 1345; Dobbs v.Brunson, 17 Ala.App. 318, 85 So. 38 (1920). Thus, the statute required Grubbs to "set out in his [notice] sufficient facts to show wherein and how the election official [was] guilty of malconduct," Carter v. Wiley, 406 So.2d 340, 347 (1981) (Maddox, J., concurring specially), as alleged in the complaint, and to do so at least 10 days before the "taking of testimony." In the absence of such notice, Grubbs could not proceed on a malconduct theory at trial. See Turner, supra; Carter, supra; see also Thomas v. Kellett, 489 So.2d 554 (Ala. 1986).
In Carter, for example, a contest was commenced on the complaint of James A. Carter, an unsuccessful candidate for election to the Mobile County Commission. 406 So.2d at 341. The complaint asserted the following three grounds for the contest:
 "`(a) Malconduct, fraud or corruption on the part of (election officials) which malconduct, fraud or corruption if corrected would show that "Contestant" received a majority of the legal votes cast in said election for said office.
 "`(b) . . . if the illegal votes counted for "Contestee" were deducted from the total votes received by said "Contestee" that "Contestant" would have a majority of the legal votes cast in said election for said office and should be declared the winner of said office.
 "`(c) . . . if the rejected legal votes had been counted, "Contestant" would have had a majority of the legal votes cast in said election for said office and should be declared the winner of said office.'"
406 So.2d at 341 (emphasis added).
Subsequently, "Carter filed a pleading styled `Notice of Nature of the Evidence' *Page 451 
. . ., which purported to comply with the terms of § 17-15-21" ("the notice pleading"). Carter, 406 So.2d at 343. The notice pleading stated, in pertinent part:
 "`Contestant states that there is hereto attached and marked Exhibit "A", . . ., the list of legal votes cast in the County Commission District Two General Election of Tuesday, November 4, 1980, which were rejected, which said list gives the name of the person voting whose legal vote was rejected. . . . Contestant avers that all of said votes on said list were cast for Contestant James A. Carter, and all of which legal votes were rejected, and all of which votes were cast by Absentee Ballots delivered to the Courthouse . . ., that said list gives the precinct and voting place wherein each voter would have voted had he or she not voted by Absentee Ballot. If these legal votes rejected are included in the total vote received by Contestant, then Contestant will have received the highest number of legal votes cast in said election.
 "`The total number of said legal votes is 1,522.
 "`Applications have heretofore been made to the Honorable John L. Moore, Judge of Probate of Mobile County, Alabama, pursuant to Section 17-15-4 of the 1975 Code of Alabama, to deliver to the Contestant or his attorney a certified copy of the poll lists of challenged ballots cast in said election . . ., and upon said Judge of Probate's complying with said provision of Alabama law, Contestant will furnish to the Contestee the names, voting districts, and number of votes thereof which will be offered as proof on the trial of said cause as having been illegally cast for Contestee Wiley. . . .'"
Carter, 406 So.2d at 343.
On motion of the contestee, Dan Wiley, the trial court struck the notice pleading on the ground that it failed to comply with § 17-15-21. When Carter declined the court's offer of an extension of time to amend the notice pleading, the court dismissed the action. 406 So.2d at 344-45.
This Court affirmed the trial court's dismissal. In doing so, it explained:
 "For aught that appears in his notice of the nature of evidence, Contestant Carter had abandoned his allegations of malconduct. In that notice pleading, Contestant pursues only those allegations of his complaint with respect to the issues of rejection of legal, and acceptance of illegal, votes. His notice does not, however, comport with the contention upon which he now proceeds: the alleged malconduct of the election officials in tabulating the votes and in tampering with the posted totals.
 ". . . Where, as here, a contestant draws his fraud allegations as charging a particular species of fraud and contends that such allegations are authorized under the statute, he is left with no choice but to conform his formal notice of the nature of evidence to his charging averments or suffer defeat in his effort to discover evidentiary support for such allegations."
Id. at 345-46 (emphasis added).
The purpose of § 17-15-21 is to ensure that notice is given to parties adverse to the election contest, at least 10 daysbefore the "taking of testimony," of what the contestant expects the evidence to show at trial. 406 So.2d at 341. It is certainly no answer that such evidence might surface during
testimony at trial. Cochran was entitled to notice, no later than September 17, 2004, of "sufficient facts to show wherein and how the election official [was] guilty," 406 So.2d at 347
(Maddox, J., concurring specially), of *Page 452 
the "misconduct, fraud, or corruption" averred in the complaint. The notice, however, contained no mention of official misconduct. For all that appeared on the day of trial, Grubbs hadabandoned his claim of "misconduct, fraud, or corruption on the part of an election official."
Not only was evidence of such conduct received at the trial, but it formed the basis of the judgment annulling the election. Specifically, the trial court found that M.L.H., D.M., and B.L. had mailed "their absentee ballots without [the] accompanying [a]ffidavit," and, therefore, that their votes for Grubbs could not be counted. It also found that their attempts at voting by absentee ballot were thwarted by wrongdoing on the part of the "Absentee Election Manager, and/or others without proper authorization acting in his stead." In particular, the court concluded that it was wrong for the election manager to be "absent from the office on the last three business days" before the week of the election, and that this absence constituted "negligence, misconduct, fraud and/or corruption." Thus, the court concluded, the unsuccessful attempts by M.L.H., D.M., and B.L. to vote by absentee ballot warranted a new election. The trial court erred in allowing Grubbs to present evidence of alleged improper conduct of the election manager and in relying on that evidence as a basis for annulling the election.
 II. Authority to Order a New Election
Because we hold that the trial court erred in annulling the election, we need not address Cochran's alternative argument that the trial court had no authority to order a new election.
 III. Summary
In summary, the trial court correctly held that the absentee ballots of M.L.H., D.M., and B.L. "could not be added to Grubbs's total to declare him the winner." Indeed, Grubbs concedes on appeal that those ballots are invalid under Alabama law. With the vote tally at 85 votes for Cochran and 84 votes for Grubbs, the trial court should have declared Cochran the winner. Having failed to do so, it erred. The judgment of the trial court is, therefore, reversed, and the cause is remanded with directions to enter a judgment in favor of Cochran.
REVERSED AND REMANDED WITH DIRECTIONS.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[1] Grubbs does not respond to this argument in his brief to this Court.